IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | | |
|---|---|---|
| BECKY A. WEAVER and RODNEY WEAVER, individually and on behalf of all others similarly situated, | ) ) ) ) | CIVIL ACTION NO. 4:14-cv-03436-RBH |
| Plaintiffs, | ) ) | |
| v. | ) ) | **O R D E R** |
| AEGON USA, LLC, f/k/a AEGON USA, INC.; and TRANSAMERICA LIFE INSURANCE COMPANY, f/k/a LIFE INVESTORS INSURANCE COMPANY OF AMERICA f/k/a EQUITY NATIONAL LIFE INSURANCE COMPANY, | ) ) ) ) ) ) ) | |
| Defendants. | ) | |

Plaintiffs Becky A. Weaver and Rodney Weaver filed this action on August 25, 2014 against Defendants Transamerica Life Insurance Company ("Transamerica") and AEGON USA, LLC ("Aegon"). Before the Court are the Motion to Dismiss filed by Defendant Transamerica (ECF No. 19) and the Motion to Dismiss filed by Defendant Aegon (ECF No. 20). Also before the Court are Plaintiffs' Motion for Leave to Amend the Complaint (ECF No. 27)[1] and Defendants' Motion for Notice of Filing and Request for Judicial Notice (ECF No. 47)[2]. A hearing was held on the motions to dismiss and motion to amend on June 2, 2015 at 10:00 a.m.

---

[1] Plaintiffs' motion to amend seeks to omit the claims for fraud and unjust enrichment and to amend other allegations of the complaint.

[2] Defendants' Motion to Take Judicial Notice was filed a month *after* the motion hearing in this matter and requests the Court to take judicial notice of certain briefs filed by the appellants in the Arkansas Supreme Court in *Hunter v. Runyan*, 382 S.W.2d 643 (Ark. 2011).

Present at the hearing were Patrick Knie, Susan Campbell, and Tony Gould on behalf of the plaintiffs and Brent Clinkscale and Michael Cashman on behalf of the defendants.

**ALLEGATIONS OF THE COMPLAINT**

The plaintiffs allege that they are owners of a supplemental cancer insurance policy issued by a predecessor-in-interest of Defendant Transamerica and serviced by Defendant Aegon. Plaintiffs bring this action on behalf of themselves and all others in the United States, or alternatively, South Carolina residents, who were not named plaintiffs in a class action formerly pending in the state circuit court of Pulaski County, Arkansas, referenced in the Complaint as the "Runyan suit", and who were insured under a supplemental cancer policy that was issued or administered by the defendants and measures some policy benefits by the medical providers' "actual charges". Plaintiffs allege that this Court has jurisdiction to decide whether the term "actual charges" in the policies means "the greater, 'billed' or 'pre-negotiated' charges or the reduced amount the provider agrees to accept from the patient's other, unrelated major medical insurance company in exchange for . . . 'discounted' or 'post-negotiated' charges." (Compl. ECF No. 1, ¶ 20a) Plaintiffs allege that this Court has jurisdiction to determine whether Defendants are precluded from taking the position that the term "actual charges" means the "discounted" or "post-negotiated" charges because three federal courts have already issued separate judgments against the defendants on that issue. Plaintiffs further allege that this Court has jurisdiction to decide whether the defendants are precluded from taking the position that the final judgment entered by the Arkansas court in *Edison Runyan, et al. v. Transamerica Life Insurance Company*, *et al*., No. CV-09-2066-3 (the "Runyan Judgment) is binding on the plaintiffs and the members of the proposed class, considering that a federal court in South Carolina has already entered a decision against the defendants on the same issue in *Hege v.*

*Aegon USA, LLC, et al.*, No.: 8:10-1578-GRA (D.S.C.).  Finally, Plaintiffs allege that this Court has jurisdiction to decide whether the Runyan Judgment is entitled to Full Faith and Credit under the United States Constitution Art. IV, § 1 or whether the Runyan Judgment was rendered in violation of the due process clause of the Fourteenth Amendment to the United States Constitution and/or the First Amendment.

The theories of recovery contained in the Complaint are (1) declaratory relief; (2) fraud; (3) unjust enrichment; (4) breach of contract; and (5) bad faith.  In the motion to amend, Plaintiffs seek permission of the Court to dismiss the claims for fraud and unjust enrichment and also to amend the complaint in other respects.  Defendants consent to the dismissal of the fraud and unjust enrichment claims but oppose any other amendments.  At the hearing, the plaintiffs requested the Court to hold the motion to amend in abeyance until a determination has been made regarding whether jurisdictional discovery will be needed regarding Defendant Aegon. The Court granted this request.  In an effort to simplify the issues now before the Court, however, the Court grants the motion to amend insofar as it requests dismissal of the fraud and unjust enrichment claims.  In this order, the Court will discuss the defendants' arguments that the remaining claims, i.e., those for declaratory relief, breach of contract, and bad faith should be dismissed.  Defendants move for dismissal of all claims pursuant to Fed. R. Civ. P. 12(b)(1), lack of subject matter jurisdiction, and Fed. R. Civ. P. 12(b)(6), failure to state a claim[3].

**Legal Standard for Fed. R. Civ. P. 12(b)(1) Motion to Dismiss for Lack of Subject Matter Jurisdiction**

---

[3] Defendants move to dismiss based upon the *Rooker-Feldman* doctrine; the Full Faith and Credit Act, 28 U.S.C. Section 1738, and the doctrine of res judicata, collateral estoppel, and the release in the *Runyan* judgment; the Anti-Injunction Act, 28 U.S.C. Section 2283; and principles of comity and federalism.

Motions to dismiss for lack of subject-matter jurisdiction challenge a court's authority to hear a matter, and the plaintiff has the burden of proving subject matter jurisdiction. *See Best Med. Belgium, Inc. v. Kingdom of Belgium*, 913 F. Supp. 2d 230, 236 (E.D. Va. 2012), citing *United States v. Hays*, 515 U.S. 737, 743 (1995). "The district courts of the United States are courts of limited jurisdiction. *Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 552, 125 S. Ct. 2611, 162 L.Ed. 2d 502 (2005). They possess only the jurisdiction authorized them by the United States Constitution and by federal statute." *U.S. ex rel. Vuyyuru v.* Jadhav, 555 F.3d 337, 347 (4th Cir. 2009). "A court may dismiss a case for lack of subject matter jurisdiction on any of the following bases: '(1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts.' *Norman v. Owens*, No. 5:12-cv-01158-RBH, 2013 WL 4042038, at *3 (D.S.C. Aug. 7, 2013) (quoting *Johnson v. United States*, 534 F.3d 958, 962 (8th Cir. 2008))." *Bucksport Water Sys., Inc. v. Weaver Eng'g, Inc*., No. 4:13-CV-02503-RBH, 2013 WL 5914410, at *2 (D.S.C. Oct. 31, 2013). "There are two critically different ways in which to present a motion to dismiss for lack of subject matter jurisdiction". *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982).

> First, it may be contended that a complaint simply fails to allege facts upon which subject matter jurisdiction can be based. In that event, all the facts alleged in the complaint are assumed to be true and the plaintiff, in effect, is afforded the same procedural protection as he would receive under a Rule 12(b)(6) consideration. Second, it may be contended that the jurisdictional allegations of the complaint were not true. A trial court may then go beyond the allegations of the complaint and in an evidentiary hearing determine if there are facts to support the jurisdictional allegations.

*Id*.

> Significantly, in considering a "facial challenge," the Court "may also consider matters of public record the parties do not dispute and certain other materials." *See, e.g., L.K. ex rel. Henderson v. N.C. State Bd. of Educ.,* No. 5:08cv85, 2011 WL 861181, at *4 (E.D.N.C. Feb. 18, 2011); *N.Y. Shipping Ass'n v. Waterfront Comm'n of N.Y. Harbor,* No. Civ. A.

10–5633, 2011 WL 1042771, at *2 (D.N.J. Mar. 18, 2011) ("In a facial attack .... [a] court may ... consider only the complaint, exhibits attached to the complaint, matters of public record, and undisputedly authentic documents if the plaintiff's claims are based upon those documents.") (emphasis added); *Community Fin. Group, Inc. v. Republic of Kenya,* —— F.Supp.2d ——, 2011 WL 915131, at *1 (D.Minn. Mar. 15, 2011) ("In a facial challenge under Rule 12(b)(1) .... [t]he court limits its inquiry to the pleadings. The pleadings, however, include matters of public record."); *Paschal v. Univ. of Pittsburgh School of Dental Medicine,* No. Civ. A. 10–502, 2010 WL 4854675, *3 (W.D.Pa. Nov. 22, 2010) (on "a facial challenge to the court's subject matter jurisdiction ... the court is not required to review evidence extrinsic to the pleadings, except matters of which the court may take judicial notice") (emphasis added); *Bridgewater v. Double Diamond– Delaware, Inc.,* No. 3:09cv1758, 2010 WL 1875617, at *5 (N.D.Tex. May 10, 2010) ("In reviewing a facial attack, the Court may consider, in a light most favorable to the plaintiff, the allegations of the complaint and documents referenced therein, as well as matters of public record such as court records.").

*Bland v. Fairfax Cnty., Va.,* No. 1:10CV1030 JCC/JFA, 2011 WL 2580343, at *2 (E.D. Va. June 29, 2011). *See Fields v. Berman*, 526 Fed. Appx. 287, 292, 2013 WL 2382304 at *5 (4th Cir. 2013) ("Furthermore, we reject Field's contention that the district court erred in dismissing Counts II and III based upon the *Rooker-Feldman* doctrine without, as he alleges, the applicability of *Rooker-Feldman* appearing on the face of his complaint and without permitting him to conduct discovery or present evidence at an evidentiary hearing. The district court properly resolved the jurisdictional issues on the extensive record before it, which included, *inter alia,* Field's complaint, fourteen exhibits attached thereto, and other relevant documents from the parties' long litigation history.")

In the case at bar, the parties disagree as to whether a facial or a factual challenge to subject matter jurisdiction is being made. Plaintiffs assert that Defendants are engaging in a facial challenge, while Defendants assert that they are making a factual challenge.[4] Plaintiffs argue that "Transamerica's Rule 12(b)(1) dismissal motion does not challenge the truthfulness

---

[4] Defendants state that they disagree with the factual allegations by Plaintiffs in the Complaint that the attorneys representing the Arkansas class colluded with the defendants.

(of) the Complaint's factual allegations in any real sense.  On the contrary, Transamerica's jurisdictional motion challenges the 'sufficiency' of those allegations insofar as it suggests the due process violations alleged in the Complaint are not actionable even if true, because this federal court cannot make findings inconsistent with the express findings of the *Runyan* court." (Pl. Resp. in Opp. to Motion to Dismiss, ECF No. 55, p. 6)

Even though Defendants assert that they make a factual challenge in which they may submit extrinsic evidence to support their argument for lack of subject matter jurisdiction, the plaintiffs claim that Defendants have really only made a facial challenge.  The Court will give Plaintiffs the benefit of the doubt and review the motion in a facial challenge fashion and consider certain unquestionable matters of public record and, specifically, certain records from the *Runyan* case of which it takes judicial notice.[5]  However, the Court finds it unnecessary and improper to consider the additional extensive *Runyan* briefs and the defendants' memoranda filed a month after the hearing in this matter and which the Court did not request and which were part of the defendants' Motion to Take Judicial Notice (ECF No. 47).

**<u>Legal Standard for Motions to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6)</u>**.

Federal Rule of Civil Procedure 12(b)(6) governs motions to dismiss for "failure to state a claim upon which relief can be granted."  The purpose of such a motion is to test the sufficiency of the facts alleged in a plaintiff's complaint. *See Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999).

Rule 8(a)(2) of the Federal Rules of Civil Procedure provides that a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." While this standard "does not require 'detailed factual allegations,' . . . [a] pleading that offers

---

[5] The Court will address which parts of the *Runyan* record it will consider hereinafter.

'labels and conclusions,' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).   Likewise, "a complaint [will not] suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557).   Rather, to survive a Rule 12(b)(6) motion to dismiss, the "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.   The United States Supreme Court recently stated that [t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Iqbal*, 556 S. Ct. at 678 (quoting *Twombly*, 550 U.S. at 570).   When ruling on a motion to dismiss, the court "must accept as true all of the factual allegations contained in the complaint." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).

Federal Rule of Civil Procedure 12(d) provides that, if on a motion under Rule 12(b)(6), "matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56" and "all parties must be given a reasonable opportunity to present all the material that is pertinent to the motion."   However, the Fourth Circuit has recognized an exception to the general rule that the court should not consider extrinsic evidence when ruling on a Rule 12(b)(6) motion.   "Although as a general rule extrinsic evidence should not be considered at the 12(b)(6) stage, we have held that when a defendant attaches a document to its motion to dismiss, 'a court may consider it in determining whether to dismiss the complaint [if] it was integral to and explicitly relied on in the complaint and [if] the plaintiffs do not challenge its authenticity."   *Am. Chiropractic Ass'n v. Trigon Healthcare, Inc.*,

367 F.3d 212, 234 (4th Cir. 1999)(quoting *Phillips v. LCI Int'l Inc*., 190 F.3d 609, 618 (4th Cir. 1999).  The reason for the exception "is that the primary problem raised by looking to documents outside the complaint—lack of notice to the plaintiff—is dissipated where plaintiff has actual notice . . . and has relied upon these documents in framing the complaint."  *Trigon*, (quoting *In re Burlington Coat Factory Sec. Litig*., 114 F.3d 1410, 1426 (3d Cir. 1997) (internal quotation marks omitted).

Plaintiffs acknowledge that, in ruling on a motion to dismiss, a court may consider extrinsic evidence not attached to the complaint as long as the items are "integral to and explicitly relied on in the complaint and  . . . the plaintiffs do not challenge [their] authenticity." *Phillips v. LCI Intern., Inc*., 190 F.3d 609, 618 (4th Cir. 1999). (Plaintiff's Response in Opposition to Motion to Dismiss, ECF No. 30, p. 13.)  However, they object to the Court's consideration of the declarations submitted by the defendants in support of their motion [Declaration of Markham R. Leventhal (ECF No. 19-3), Declaration of Stephen Gwinn dated November 5, 2009 (ECF No. 19-8), and Declaration of Stephen Gwinn dated October 24, 2014 (ECF No. 19-10)] and any unauthenticated documents that are attached to the declarations.  The Court agrees with the plaintiffs that the declarations and any unauthenticated attachments from the Arkansas records should not be considered and will disregard the same in making its rulings. It will, however, consider only the authenticated copies of the Arkansas circuit court record of proceedings in *Runyan* submitted by the defendants with their motion to dismiss (ECF No. 19) and also the published Arkansas Supreme Court decision in the case.[6] For example, the *Runyan* court's findings of fact and conclusions of law were incorporated into that court's final

_____

[6] The Court declines, in its discretion, to convert Transamerica's motion to dismiss to a motion for summary judgment.

judgment.  Authenticated copies of the *Runyan* court's Final Order and Judgment ("Final Judgment") and its Findings of Fact and Conclusions of Law ("Findings") have been filed with this Court in conjunction with the Motion to Dismiss (ECF No. 19).[7]

The Court denies the defendants' [47] Motion for Judicial Notice which requests the Court to take judicial notice of certain briefs filed by the appellants in the *Runyan* appeal.  This motion was submitted approximately one month after the hearing on the motions to dismiss in this matter (ECF No. 19 and 20) and about nine months after the filing of the motions to dismiss.  Therefore, it is untimely.  In addition, consideration of these briefs is not necessary to this Court's ruling.

The Court will next discuss the *Runyan* class action in Arkansas which was specifically referenced in the Complaint herein and as shown by the authenticated copies of the *Runyan* record attached to Transamerica's motion to dismiss.

**The Runyan litigation**

### *The Insurance Policies*

The policies at issue were supplemental cancer insurance policies that provided limited benefits, many of which were expressed in fixed dollar amounts, for example, $100 to $200 per day for hospital confinement, $150 for certain lab or diagnostic tests, among other fixed dollar benefits.  Findings at 4 ¶ 5.[8]  Absent an assignment of benefits, the policies paid benefits in cash directly to the insured.  *Id.* at 4 ¶ 6.  The policies generally included an insuring clause on the

---

[7] ECF Nos. 19-1 (Final Judgment) & 19-2 (Findings).  Paragraph 2 of the Final Judgment incorporated the Findings into the Final Judgment.  Citations to pages of the Findings and Final Judgment are to the actual pages of these documents.  Unless otherwise indicated, citations to pages of all other ECF documents are to the page numbers created by the ECF system located in the header of the document.

[8] Many of the policies were issued by companies that merged into Transamerica or predecessors of Transamerica.  For ease of reference, all predecessor companies that issued the policies are referred to as Transamerica.

cover page stating that the policies insured for "loss" or "loss incurred." *Id.* at 4 ¶ 7.  In addition to fixed benefits, the policies paid some benefits based on the "actual charges" for certain items, including for example, chemotherapy, radiation therapy, ambulance services, or transportation. *Id.* at 5-6 ¶ 9.  The policies required that an insured submit written "proof of loss" as a condition to receiving benefits.  *Id.* at 4 ¶ 7.  The premium rates under the policies were subject to annual increases upon written notice.  *Id.* at 6 ¶ 12.

In 2004, Transamerica determined it had been overpaying claims for "actual charges" benefits because policyholders were submitting documents with their claims that contained "list prices," instead of the actual amounts being billed, charged, and paid for their medical treatment.[9]  The *Runyan* court noted that "list prices are substantially inflated, and virtually no consumers actually pay these list prices."[10]  Transamerica's investigation concluded that the payment of "actual charges" benefits based on documents reflecting list prices was resulting in windfall payments to a minority of policyholders and driving up premium rates for the majority of policyholders.[11]

In 2006, Transamerica sent a letter to its policyholders explaining that it was updating its claim forms and instructions to ensure it would receive proper documentation of the "actual

---

[9] Findings at 7 ¶¶ 13-14, 11 ¶ 13.  "'List prices' are the maximum prices that hospitals and other healthcare providers create for their various services or procedure codes."  *Id.* at 12 ¶ 13.

[10] Findings at 12 ¶ 13 (citing George A. Nation, III, "Obscene Contracts:  The Doctrine of Unconscionability and Hospital Billing of the Uninsured," 94 Ky. L.J. 101, 104 (2005) ("The labels for these charges, 'regular,' 'full,' or 'list,' are misleading, because in fact they are paid by much less than five percent of patients nationally.")).

[11] Findings at 7 ¶ 14; *see also id.* at 30 ¶ 10 (quoting Bulletin No. 2008-15, S.C. Dept. of Ins. at 2 (Aug. 28, 2008) (explaining that insurance is a contract of indemnification and construction of "*actual charges*" consistent with this basic principle "ensures that a few insureds and beneficiaries do not receive windfalls . . . greater than sums actually paid to health care providers," and "[s]uch windfalls inevitably would cause premiums to increase exponentially for all and would restrict the availability and affordability of supplemental disease policies")) (emphasis omitted).

charges" being paid to and accepted by medical providers.  Findings at 7 ¶ 15.  The 2006 letter explained Transamerica's view that "list prices" do not constitute "actual charges":

> Doctors, hospitals, and other healthcare providers will often send informational statements to the patient that contain "list" prices or "standard" rates for their medical services.  This happens most frequently if the patient is covered by Medicare or a group health insurance plan.  These statements are not true "bills" and do not reflect the actual amounts being paid to and accepted by the healthcare provider as payment in full.  Consequently, these types of informational statements do not reflect the "actual charges" being incurred and paid.  The amounts healthcare providers are actually charging and accepting as payment are often significantly less than the amounts listed on these informational statements.

Findings at 7-8 ¶ 16.  The letter included updated claim forms and explained that Transamerica had revised the claim forms "to make sure that the necessary information and documents are included to support a claim for benefits based on actual charges."  *Id.* at 8 ¶ 16.  Very few policyholders communicated any disagreement with the company's explanation of "actual charges," and one year after the 2006 letter, 83% of policyholders had renewed their policies.  *Id.* at 8 ¶ 17.

### *Litigation over "Actual Charges"*

In 2007, three class actions were filed against Transamerica's predecessors, the first of which was *Pipes v. Life Investors Insurance Company of America*, Case No. 1:07-cv-00035-SWW (E.D. Ark.) ("*Pipes*").  Findings at 8-9 ¶ 2.  Plaintiffs' counsel in *Pipes* also filed five additional cases, including three class actions and two individual actions in various states including Arkansas, Mississippi, Michigan, and Louisiana.  Findings at 9 ¶ 3.  The cases all complained that Transamerica had breached its policies in 2006 by changing its method of paying "actual charges" benefits.

Transamerica argued that its policies insured only for "loss" or "loss incurred," and that

"actual charges" under the policies could only be reasonably interpreted as the actual amounts that are being charged, paid to, and accepted by the healthcare provider as payment in full for the services rendered. Findings at 11 ¶ 11. Transamerica argued further that it began overpaying claims for "actual charges" benefits as a result of changes in healthcare billing practices and because insureds began submitting, and claim examiners began incorrectly accepting, documents from healthcare providers which were not genuine "bills" and which contained "list prices" instead of the actual amounts being paid to and accepted by the providers as payment for their services. *Id.* at 11 ¶ 12. Transamerica also argued that the few plaintiffs bringing these class actions had a substantial conflict of interest with the vast majority of policyholders because they were seeking a windfall for themselves, while driving up the premiums exponentially for the majority of policyholders.[12]

### *The Runyan Class Action Settlement*

Following a year and a half of contentious litigation, including written discovery, document production, depositions, and third-party discovery, on October 6, 2008, counsel for Transamerica met to discuss settlement with plaintiffs' counsel in *Pipes*, who also represented the plaintiffs in five other cases. Findings at 9 ¶¶ 3-4, 13 ¶ 1; *Hall v. Equity Nat'l Life Ins. Co.*, 730 F. Supp. 2d 936, 938 (E.D. Ark. 2010) ("Because Pipes's counsel had the largest number of plaintiffs and related cases, counsel for [Transamerica] began settlement discussions with them

---

[12] *See Hunter v. Transamerica Life Ins. Co.*, 498 F. App'x 430, 432 n.1 (5th Cir. 2012) ("despite the policy's insuring clause—which insures the policyholder "for loss incurred"—the plaintiffs in these class actions are seeking a windfall). *See also Pipes v. Life Investors Ins. Co. of Am.*, 254 F.R.D. 544, 550 (E.D. Ark. 2008) (noting that "[t]he millions of dollars in extra premium rate increases required by plaintiffs' proposed method of paying benefits will make Life Investors' [cancer only] policies less affordable or unaffordable for a large number of policyholders" (quoting actuarial testimony), and concluding, "[t]he conflict identified by [Transamerica] goes to the very heart of this litigation"); *Smith v. Life Investors Ins. Co. of Am.*, 2009 WL 3756913, at *9 (W.D. Pa. Nov. 6, 2009) (denying class certification because economic interests of named plaintiff with "actual charges" claim conflicted with the "majority of the putative class members, who . . . may instead prefer to prevent future premium increases").

in October 2008.").  On November 20-21, 2008, the parties engaged in a two-day mediation before former U.S. District Court Judge Nicholas Politan.  Findings at 13 ¶ 2.  The parties did not reach a settlement but agreed to continue negotiating.  *Id.*  On November 25, 2008, the district court in *Pipes* entered an order denying class certification.  *Pipes*, 254 F.R.D. at 552.  The *Pipes* lawyers filed a motion for reconsideration, which was fully briefed on February 20, 2009.  Findings at 14 ¶ 3.

After months of additional negotiations, in early March 2009, the parties reached a preliminary understanding on the terms of a global class action settlement, subject to completion of a comprehensive settlement agreement and subject to court approval.  Findings at 14 ¶ 4.  On March 13, 2009, plaintiffs' counsel filed a class action complaint in the *Runyan* action.  Findings at 14 ¶ 5.  The *Runyan* complaint was not a new litigation.  Rather, *Runyan* was the continuation and "consolidation of six prior actions [brought by the *Runyan* class counsel], including four class actions and two individual actions."  Findings at 8 ¶ 1; *Hall*, 730 F. Supp. 2d at 939 (the *Runyan* complaint "essentially consolidated the claims of the plaintiffs in the *Pipes*, *Runyan*, *Ross*, *Weidman*, *Harris*, and *Nolan* federal actions").  All eight plaintiffs from *Pipes* class counsel's six federal cases joined as representative plaintiffs in the *Runyan* class action complaint.

Approximately one month later, on or about April 17, 2009, the *Runyan* class plaintiffs and Transamerica finalized a Class Action Settlement Agreement (ECF No. 19-5, at pp. 70-175) and filed it with the trial court on April 20, 2009.  *Hunter v. Runyan*, 382 S.W.3d 643, 646 (Ark. 2011).  The *Runyan* court granted preliminary approval to the settlement on April 23, 2009, appointed a Settlement Administrator, and approved a comprehensive notice plan, including written notice to settlement class members, publication notice in *USA Today*, creation of a

settlement website, and establishment of a toll-free telephone call center.  Findings at 1-2, 19-20 ¶¶ 2-5.  All six federal courts handling class counsel's other cases stayed their proceedings so the *Runyan* state court could consider whether to approve the settlement.  *Hall*, 730 F. Supp. 2d at 939.

### The Runyan Class Notice

On May 14, 2009, the Settlement Administrator mailed the *Runyan* notice of Proposed Class Action Settlement to 250,136 settlement class members.  Findings at 19-20 ¶ 3.[13]  The class notice approved by the *Runyan* court was based on the Question and Answer format recommended by the Federal Judicial Center.  Findings at 21 ¶ 7.  Among other things, the notice contained a section explaining the nature of the dispute as follows:

| 4.  What is this lawsuit about? |
| --- |

The Plaintiffs in this lawsuit assert a variety of claims on behalf of themselves and a class of other persons relating to cancer insurance policies and other specified disease or supplemental insurance policies.  Among other things, Plaintiffs allege the following:

- that the Policies pay certain benefits based upon the "actual charges" for certain services, such as chemotherapy, radiation therapy, blood-related expenses, and ambulance services, and that prior to April 1, 2006, the Defendants paid claims and interpreted "actual charges" to mean any amount that appeared on a medical provider's statement, without reduction for any discount, third-party payment, or write-off of any kind;

- that in early 2006, the Defendants acted unlawfully by sending a form letter to policyholders and announcing an intention to change their claim forms and procedures to interpret "actual charges" as the amount actually owed and paid to the medical provider as payment in full for the services rendered; and that beginning on or about April 1, 2006, the Defendants reduced benefits under the Policies by implementing this change in claim forms and procedures;

---

[13] A copy of the *Runyan* class settlement notice is contained in the record at ECF No. 19-9, at pp. 5-21.

- that the Defendants' change in their claim procedures in 2006 created a new definition or interpretation of "actual charges" that was inconsistent with the Defendants' prior practice and course of conduct, and that Plaintiffs and other policyholders interpreted the Policies similar to the prior practice and justifiably relied upon Defendants' prior practice in paying claims; and that by changing its claim procedures, the Defendants' breached the insurance Policies and acted in bad faith;

- that the Defendants acted inconsistently with the way in which the Policies had been marketed and sold, and made misrepresentations at the time of sale regarding coverage and/or benefits payable under the Policies, and subsequently made misrepresentations to insurance regulators and policyholders regarding the reasons and legal authority for their change in procedures;

- that the Defendants reduced benefits and wrongfully denied coverage or failed to pay for a variety of other items covered under the Policies; that the Defendants were motivated by a desire to elevate company profits above their obligations under the Policies; that the Defendants conspired and worked in concert with one another, and that AEGON USA, Inc. is responsible for the wrongful conduct of all other Defendants;

- that many if not all policyholders have experienced premium rate increases and that these premium increases were unfair, improper, and/or in violation of the terms of the Policies and/or state insurance laws; and

- that premium rate increases were the result of actuarial mistakes in pricing the Policies, or the payment of excessive benefits, and that Defendants failed to disclose the likelihood and extent of premium increases and all of the reasons for premium rate increases, including that Defendants had closed and stopped selling one or more policy forms or blocks of policies; and that continually raising premium rates breaches the promise of guaranteed renewability under the Policies and constitutes bad faith and an unfair and deceptive practice.

The Defendants strenuously deny any wrongdoing and maintain that the payment of claims under the Policies, the correction of the claim forms and procedures for the Policies, and all actions taken with respect to premiums and benefits have been proper, lawful, and appropriate in all respects.  Among other things, the Defendants contend:

- that the Company sent a letter in 2006 to all policyholders in good faith explaining the need to update claim forms, that the Company is properly paying benefits for "actual charges," and that the "actual charges" are the actual amounts that are being charged by, paid to, and accepted by the provider as payment in full for the services rendered;

- that the Company discovered that it had been overpaying claims for "actual charges" benefits because insureds began submitting statements from healthcare providers that contained "list prices" instead of the "actual charges;" and that the Company has every right to correct its claim practices to prevent unnecessary premium rate increases to other policyholders;

- that all coverage and benefits decisions by the Company have been correctly made in good faith with the intent to correctly apply the language and terms of the Policies; and

- that the Policies are subject to premium rate increases and all such premium rate increases have been lawfully and properly implemented, and filed with state regulators as required.

ECF No. 19-9, at pp. 9-10 (pp. 5-6 of notice).

The notice provided an opportunity to opt out of the settlement and instructions on how to do so (by mailing a written request for exclusion to the settlement administrator postmarked on or before June 28, 2009). ECF No. 19-9, at p. 13 (p. 9 of notice). The notice also explained the consequences of not excluding yourself from the class:

> **9. What am I giving up to receive a payment or to stay in the Settlement Class?**
>
> If you do not exclude yourself from the Settlement Class, you will be eligible for the benefits discussed above for which you qualify, but you will not be able to sue, continue to sue, or be part of any other lawsuit against any of the Defendants or their predecessors or affiliated companies concerning the claims alleged in this case. If you stay in the Settlement Class, all of the Court's orders will apply to you and legally bind you.
>
> If the Settlement is finally approved by the Court, all individual and class action claims asserted in this lawsuit and any that could have been asserted, will be dismissed on the merits and with prejudice. None of those claims may thereafter be asserted by any Settlement Class member in any other lawsuit or proceeding.
>
> By staying in the Class, you will also be bound by the release of all claims against the Defendants and their affiliates and others, including all claims alleged in this lawsuit and any that could have been alleged. A complete copy of the "Release" that will bind all Settlement Class members is attached to this Notice as Exhibit A. The Release is comprehensive and is an essential term to the Settlement and should be reviewed carefully because it will affect your rights. Anyone not in agreement with the Release should take steps to exclude themselves from the Settlement.

EXCLUDING YOURSELF FROM THE SETTLEMENT

> If you do not want any of the benefits from the Settlement, or if it is more important for you to keep the right to sue or continue to sue any of the Defendants on your own, then you must take steps to exclude yourself from the Settlement Class. This is sometimes referred to as "opting out" of the Settlement Class.

ECF No. 19-9, at p. 13 (p. 9 of notice); *see also id.* at p. 14 (p. 10 of notice) ("**If I do not exclude myself, may I sue the Defendants later?** No. Unless you exclude yourself, you give up the right to sue the Defendants for the claims that this Settlement resolves and that are described in the attached Release (Exhibit A).") (bold font in original).

The notice also provided all settlement class members with an opportunity to object to the settlement. ECF No. 19-9, at p. 14 (p. 10 of notice) ("If you are a Settlement Class member and you do not exclude yourself from the Settlement Class, you can object to the Settlement if you do not like any part of it. You can give reasons why you think the Court should not approve it. The Court will consider your views."); *see also id.* at p. 15 (p. 11 of notice) (explaining the difference between objecting and excluding). The notice informed all settlement class members that the court would hold a fairness hearing to decide whether to finally approve the settlement. The fairness hearing was originally scheduled for July 27, 2009.[14]

### *The Runyan Trial Court's Review of the Settlement*

From May through December of 2009, Judge James M. "Jay" Moody, Jr., the *Runyan* state court trial judge, presided over contested proceedings to determine whether the settlement

---

[14] The fairness hearing was postponed because a district court in Tennessee (the *Gooch* court) enjoined Transamerica from completing the settlement. This injunction was stayed by the Sixth Circuit on an emergency motion and later vacated in its entirety. *In re Life Investors Ins. Co. of Am.*, No. 09-5598 (Order, dated Aug. 17, 2009) (granting Transamerica's emergency motion to stay injunction of *Runyan* settlement proceedings); *In re Life Investors Ins. Co. of Am.*, 589 F.3d 319, 332 (6th Cir. 2009) (vacating injunction). The fairness hearing was ultimately held on November 9, 2009.

should be approved as fair, reasonable, and in the best interests of the settlement class.[15]    The proceedings included objections, motions to intervene, and other motions filed by lawyers representing objectors and plaintiffs with competing class actions.[16]    The objectors and putative intervenors argued, among other things, that the settlement benefits were "illusory," that the parties engaged in "collusion," that the class representatives were not adequate, that the objectors were denied due process, and a host of other arguments.    In addition to motions, briefs, and volumes of evidence, Judge Moody held several hearings, including a preliminary approval hearing in April, three hearings on September 16, 17, and October 1, 2009, devoted to motions by objectors and putative intervenors, and a fairness hearing on November 9, 2009.  ECF No. 18-8, at pp. 225, 231, 241.

At the fairness hearing, all class members who had timely filed a notice of intent to appear were allowed to present argument.  Findings at 2.  Plaintiffs' counsel Patrick Knie argued two motions at the fairness hearing—a motion to carve out South Carolina policyholders, and a motion to extend the opt out deadline and to also renotice the class.  ECF No. 19-8, at pp. 72-82 (Transcript at pp. 9-19).   Mr. Knie argued that (i) the settlement was contrary to the Fourth Circuit opinion in *Ward v. Dixie National Life Insurance Co.*, 2007 WL 4293319 (4th Cir. Nov. 29, 2007), (ii) the district court in *Ward* subsequently entered a summary judgment in favor of policyholders in that case, (iii) the notice was misleading because it did not state that the district court in *Ward* had ruled that it would apply the "actual charges" statute prospectively

---

[15] Judge Moody is now a U.S. District Judge in the Eastern District of Arkansas.

[16] Plaintiffs' lead counsel here, Tony Gould, and co-counsel, Patrick Knie and Susan Campbell, represented objectors in the *Runyan* proceeding while pursuing competing class actions in other states.  Mr. Gould was counsel in a putative class action in Oklahoma.  *Lindley v. Life Investors Ins. Co. of Am.*, Case No. 4:08-cv-00379 (N.D. Okla.) ("*Lindley*").  Mr. Knie and Ms. Campbell were counsel in a putative class action in this district. *Belue v. AEGON USA, Inc.*, Case No. 7:08-cv-03830-GRA (D.S.C.) ("*Belue*").

only, (iv) South Carolina's law was unique, and (v) South Carolina policyholders should receive a renotice to correct the alleged misrepresentation about the South Carolina statute.  ECF No. 19-8, at pp. 73-81 (Transcript at pp. 10-18).

In response, Transamerica argued that Mr. Knie had already opted out his own clients and he had no right to represent or exclude other South Carolina policyholders who were not his clients, especially given that many had already filed claims.  *Id.* at 83 (Transcript at p. 20). Transamerica argued further (i) that the Fourth Circuit's 2007 decision in *Ward* was designated unpublished and not binding precedent, (ii) that the South Carolina Department of Insurance disagreed so vehemently with *Ward* that it lobbied the legislature which passed a statute defining "actual charges" to overrule *Ward*, (iii) that the Department had issued a Bulletin explaining that the statute was to prevent a few insureds from receiving windfalls, resulting in exponential premium rate increases to other policyholders, (iv) that the Bulletin required claims for "actual charges" benefits after the effective date of the statute to be paid according to the statute, (v) that the settlement was consistent with the statute, and (vi) that many policyholders would be better off in the settlement.  *Id.* at 83-86 (Transcript at pp. 20-23).  *Runyan* class counsel argued (i) that any South Carolina policyholders who did not like the settlement had the option to opt out, (ii) several did opt out, but many filed claims and wanted to participate in the settlement, and (iii) there was no defect in the notice.  *Id.* at 88-89 (Transcript at pp. 25-26).

On December 8, 2009, Judge Moody entered a 31-page Order ruling on various motions to intervene and other pending motions by class members opposing the settlement.  ECF No. 19-8, at pp. 219-249.  The court noted that the motions were filed by a very small minority of class members opposing the settlement:

> The Settlement Class overall has responded very favorably to the Notice.
> From the 250,136 Notices sent to Settlement Class members, a very small

> number of individuals filed timely objections with the Court. Several class members withdrew their objections, and other objectors, proven to be non-class members also withdrew their objections. As a result, there are only nine objectors that remain pending before the Court. Thus, the ratio of objectors to Settlement Class members (9:250,136) is less than four one-thousandths of 1%, or approximately .0036%). Several of these remaining objectors appear to have been actively solicited to object, or they are represented by plaintiffs' counsel in other putative class actions. In contrast to the minimal number of objections, the Settlement Administrator has received several thousand Claim Forms from Class members seeking one of the monetary benefits under the Settlement.

ECF No. 19-8, at p. 227 (footnote and citations omitted). "In its 31-page order, the Circuit Court discussed at length the history of the litigation, how the six federal cases came to be consolidated in the *Runyan* state action, the settlement agreement, and the notice plan. The Circuit Court also noted the objections by counsel for the plaintiffs in the other pending federal actions in other states, including *Gooch* (M.D. Tenn.), *Belue* (D.S.C.), and *Smith* (W.D. Pa.)." *Hall*, 730 F. Supp. 2d at 940.

"In a lengthy discussion of the merits of the petitioners' arguments to intervene," *Hall*, 730 F. Supp. 2d at 940, the *Runyan* court denied the motions to intervene. ECF No. 19-8, at pp. 231-240 (pp. 13-22 of Dec. 8, 2009 Order). Judge Moody rejected the movants' arguments that intervention should be allowed because the existing class representatives were not adequate:

> The proposed intervenors have also failed to meet their burden to establish the third factor under Rule 24(a)(2) — that their interests are not adequately represented by the existing parties. There are eight Class Representatives in this action. They are all current or former policyholders of insurance policies similar to the policies owned or formerly owned by *Crager*, *Shepherd*, and *Hunter*. The proposed intervenors have not distinguished their interests in any meaningful way from those of the existing Class Representatives.

*Id.* at p. 236 (p. 18 of Dec. 8, 2009 Order). Judge Moody concluded, "intervention would not add substantial value to the Settlement, but would cause substantial delay and prejudice." *Id.* at p. 240 (p. 22 of Dec. 8, 2009 Order).

### *The Runyan Trial Court's Findings and Final Judgment*

On December 21, 2009, approximately six weeks after the final fairness hearing, Judge Moody entered his final judgment, which incorporated 63 pages of findings of fact and conclusions of law. ECF Nos. 19-1 & 19-2. "As part of its findings of fact, the court found that the parties were 'represented by experienced class action counsel who worked diligently negotiating the Settlement at arms' length in an adversarial setting to ensure that the Settlement Agreement was fair, reasonable, and adequate …. The Court finds further that the Settlement was negotiated in good faith and there was no collusion or "reverse auction" of any kind in the negotiation of the Settlement.'" *Hall*, 730 F. Supp. 2d at 940 (quoting Findings at 14 ¶ 7).

Judge Moody reviewed the terms and benefits of the agreement, including the provision which resolved the parties' dispute over "actual charges." Findings at 15-18 ¶¶ 1-10. He found:

> The most significant benefit to the Settlement Class is the value of the injunction requiring Actual Charges Benefits to be paid according to "the amount of money that a healthcare provider (or other vendor) agrees to accept, or is obligated by agreement or operation of law to accept, as payment in full for the particular goods and services provided to the patient (or consumer)." Agreement §1(b). This provision is estimated to save the Settlement Class approximately $135,925,608 of premium dollars over the next 10 years. Absent this provision, the evidence is overwhelming that payment of benefits based on "list prices" would result in dramatic premium rate increases to the detriment of the Settlement Class as a whole, rendering many of these Policies unaffordable and resulting in loss of coverage.

Findings at 16-17 ¶ 6 (citations omitted). The court concluded, "[t]he Settlement provision governing the payment of Actual Charges Benefits going forward is a fair, adequate, and reasonable method of resolving any alleged ambiguity regarding how 'actual charges' should be interpreted under the Policies. Indeed, this provision is consistent with the definition of 'actual charges' in five state statutes. Moreover, this same type of provision was included in at least two

other class action settlements involving cancer insurance policies which were approved by other Courts." *Id.* at 17 ¶ 6 (footnote and citation omitted).

The court reviewed the other benefits of the settlement and concluded that the total value of the settlement to the class as a whole exceeded $151 million. Findings at 18 ¶ 8. The court rejected objectors' arguments that the benefits of the settlement were "illusory." *Id.* at 48 ¶ 8 ("Any contention that the Settlement benefits are 'illusory' is meritless.").

The *Runyan* court also reviewed the class notice and the notice plan, and found:

> The Notice clearly and concisely informed Settlement Class members of: (i) who is part of the Settlement; (ii) the nature of the litigation; (iii) the terms of the Settlement; (iv) the binding effect of any judgment for those persons who are Settlement Class members; (v) the right of Class members to request exclusion (opt out) from the Class and the procedures and deadlines for doing so; (vi) the right of Class members to object to any aspect of the Settlement and to appear at the Fairness Hearing and the procedures and deadlines for doing so; (vii) the date, time, and location of the Fairness Hearing; (viii) how to obtain additional information; (ix) how to make a claim; and (x) information on Class Counsel's fees and expenses.

Findings at 20-21 ¶ 6. The court also noted that the Settlement Administrator had received approximately 476 requests for exclusion, "illustrating that Settlement Class members were able to follow the directions and exclude themselves if they desired to do so." *Id.* at 21 ¶ 6.

The *Runyan* court applied the legal criteria necessary to evaluate whether a class action settlement should be approved. In addition to consideration of federal cases interpreting class issues under federal Rule 23 (Findings at 22-23 ¶ 1), Judge Moody noted the strong public policy favoring settlements under both Arkansas and federal law. Findings at 21-23 ¶¶ 1-3 (collecting cases). The court found that the settlement "was negotiated at arms' length by experienced counsel after substantial litigation, discovery, and in an adversarial setting with multiple cases pending between the Parties," and that under such circumstances, "[m]any courts recognize a

presumption of fairness."  Findings at 23 ¶ 3 (citing *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 116 (2d Cir. 2005) ("A 'presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery.'") (quoting Manual for Complex Litigation, Third, § 30.42 (1995)); *City P'ship Co. v. Atl. Acquisition Ltd. P'ship*, 100 F.3d 1041, 1043 (1st Cir. 1996) ("When sufficient discovery has been provided and the parties have bargained at arms-length, there is a presumption in favor of the settlement.") (other citations omitted).

Judge Moody then applied the *Ballard* factors for evaluating whether a class action settlement is fair, reasonable, and adequate, which factors include:

(1)    the strength of the case for the plaintiffs on the merits, balanced against the amount offered in the settlement;

(2)    the defendant's overall financial condition and ability to pay;

(3)    the complexity, length, and expense of further litigation; and

(4)    the amount of opposition to the settlement.

*Ballard v. Martin*, 79 S.W.3d 838, 844 (Ark. 2002) (citing *Grunin v. Int'l House of Pancakes*, 513 F.2d 114, 124 (8th Cir. 1975)).

Regarding the strength of the plaintiffs' case on the merits, the record shows Judge Moody was aware of all litigation pending against the defendant companies and the status of each case.  *See* Findings at 10-11 ¶ 10 & n.8.  In addition, the *Runyan* court undertook a detailed review of the legal landscape at the time of the settlement.    Findings at 26-31 ¶¶ 3-11.  Regarding the merits of plaintiffs' claims and the likelihood of prevailing, the *Runyan* court noted that the plaintiffs would need to prevail not just on the merits of "actual charges," but also prevail on class certification in a contested proceeding.  The court noted that two courts had already denied class certification in cases involving Transamerica's policies.  *Id.* at 26 ¶ 3 ("it is

uncertain that Plaintiffs would succeed at class certification outside the Settlement context.  The chances of successfully obtaining a national class certification in a contested proceeding, and prevailing through appeal, are even more uncertain").  The *Runyan* court concluded:  "The merits of the Plaintiffs' case, when weighed against the terms of the Settlement, favor final approval of the Settlement.  The possibility of Plaintiffs litigating this case on a class basis through judgment is highly uncertain and would involve expensive, time-consuming continued litigation, whereas the overall value of the Settlement is significant."  Findings at 26 ¶ 4.

The *Runyan* court also addressed the third *Ballard* factor, which involves consideration of "the complexity, length, and expense of further litigation."  Findings at 24 ¶ 4, 35-36 ¶ 24. The court concluded:

> The third *Ballard* factor also weighs heavily in favor of approving the Settlement.  There is no question that, absent the Settlement, Class members would be subject to lengthy, continued, and expensive litigation, as well as the prospect of numerous potential appeals.  If no Settlement is approved, the Parties will continue to litigate numerous state-wide putative class actions far into the foreseeable future.  Decisions on class certification would likely lead to interlocutory appeals, and once the class issues are finally resolved, any trials in the Litigation would be expensive and would likely lead to further appeals.  The time and expense of continuing the Litigation would be substantial, and such transactional costs could significantly reduce and delay whatever judgment, if any, Plaintiffs could ultimately obtain, there being no guarantee that Plaintiffs would recover anything on a class-wide basis.

Findings at 35-36 ¶ 24.

Regarding the fourth *Ballard* factor—the amount of opposition to the settlement—the *Runyan* court noted that there were very few objections, and "[t]he minimal amount of opposition to the Settlement and its unpersuasive nature also weighs heavily in favor of final approval."  Findings at 36 ¶ 26.  "Although more than 250,136 Notices were sent to Settlement Class Members, only eighteen individuals filed objections with the Court, and nine of those were

subsequently withdrawn." Findings at 36-37 ¶ 26 (footnote omitted). In the end, the *Runyan* court concluded, "[t]he *Ballard* factors are plainly met in this case, and the Settlement Agreement is therefore approved as fair, reasonable, and adequate." Findings at 26 ¶ 2.

The court also conducted an analysis of the requirements of Arkansas Rule 23 and concluded that they were satisfied and that the settlement should be approved. Findings at 38-44 ¶¶ 1-15. Regarding adequacy under Arkansas Rule 23(a)(4), the court found that *Runyan* class counsel were experienced in class actions, expended considerable time and effort proving their claims, were prosecuting six actions against Transamerica, and "[t]here has been no showing that Class Counsel in this action is inadequate." Findings at 41 ¶ 9. Regarding the eight named plaintiffs, Judge Moody found, "[e]ach of the Class Representatives has a strong interest in the Settlement and there is no evidence of collusion. The Court finds that the Class Representatives are adequate for purposes of adjudicating the Settlement in the best interests of the Settlement Class." *Id.* at 41 ¶ 10. Regarding the conflict of interest that caused the *Pipes* and *Smith* courts to deny class certification, the court noted, "[t]he Settlement here requires payment of Actual Charges Benefits consistent with the actual amount paid or owed to the provider, and therefore eliminates the conflict mentioned in *Pipes*." *Id.* at 42 ¶ 11.[17]

The *Runyan* court's findings also contain extensive discussion of all objections filed in opposition to the settlement, including Judge Moody's reasoning as to why each of the objections was overruled. Findings at 44-55 ¶¶ 1-25. These objections included arguments to "carve out" Mississippi policyholders, that the settlement relief was inadequate, and that variations in state law precluded settlement. *Id.* at 46-47 ¶¶ 5-6 & n.35. The court rejected

---

[17] The *Runyan* court also concluded that the settlement eliminated several other problematic issues that would exist in a contested class certification proceeding, for example, variations in state law and individual proof of loss issues. Findings at 42-43 ¶ 12.

arguments by South Carolina objectors that the settlement benefits were illusory and that the settlement was a "reverse auction." *Id.* at 48-49 ¶¶ 8-9 ("the Court has found there was no collusion or reverse auction of any kind").[18]  The court also rejected an objection that the "Actual Charges Benefit injunction confers no benefit on the Class, and instead benefits only the Company." *Id.* at 49 ¶ 9 (finding "[t]he injunction governing payment of Actual Charges Benefits will save the Settlement Class millions of premium dollars").  Judge Moody concluded, "the South Carolina Objectors ignore the law and public policy of their own State, which has passed a statute consistent with the Actual Charges Benefit in the Settlement." *Id.* (citing S.C. Ann. § 38-71-242; Bulletin No. 2008-15, S.C. Dep't of Ins. (Aug. 28, 2008)).  The court concluded that "none of the objections require disapproval of the Settlement." *Id.* at 45 ¶ 2.

### *Post-Judgment Motions*

After entry of the *Runyan* final judgment, objector Daniel Crager filed a Motion for Rehearing, and settlement class member William Shepherd filed a Motion to Reconsider.  Both motions relied on an interlocutory order certifying a competing class in the *Gooch* case (the same district court in Tennessee that had previously been reversed by the Sixth Circuit for enjoining the settlement).  Judge Moody denied the motions, holding:

> The Court's Final Judgment was entered after careful consideration over a lengthy period of time of volumes of briefing and evidentiary materials submitted in favor and against final approval of the Settlement. For the reasons set forth in this Court's Findings of Fact and Conclusions of Law, the Court overruled the objections and approved the Settlement as fair, reasonable, and adequate pursuant to Rule 23 of the Arkansas Rules of Civil Procedure.  The Court finds the motions to be without merit, and nothing in the motions justifies reconsideration of the Court's approval of the Settlement or modification of the Final Judgment.

---

[18] The court cited to the definition of a "reverse auction" in the *Manual for Complex Litigation* and concluded, "the record is clear that [Transamerica] negotiated with one group of plaintiffs' counsel, and there was no 'auctioning' whatsoever."  Findings at 48-49 n.38.

ECF No. 19-8, at pp. 265-266 (pp. 1-2 of Feb. 4, 2010 Order).  Regarding the *Gooch* order, Judge Moody ruled, "[t]he issues surrounding the proceedings in *Gooch* were fully argued and considered by this Court prior to Entry of the Final Judgment" and "the interlocutory order in *Gooch* provides no reason for this Court to revisit or reconsider its Final Judgment."  *Id.* at 266 (p. 2 of Feb. 4, 2010 Order).

### *The Arkansas Supreme Court's Decision*

Three settlement class members filed appeals in *Runyan* to the Arkansas Supreme Court.[19]  Appellants argued, among other things, that the *Runyan* class representatives were not adequate, that the parties were not adverse because they had agreed on the material terms of the settlement before the complaint was filed, that the procedures employed by the trial court violated due process, that their interests were not adequately represented, and that the class notice was too broad and failed to account for differences among states.

In *Hunter v. Runyan*, 2011 Ark. 43, 382 S.W.3d 643(2011), *cert. denied sub nom. Crager v. Runyan*, 132 S. Ct. 243 (2011) the Arkansas Supreme Court noted the appeal was "of substantial public interest" and presented "an issue of first impression" regarding subject matter jurisdiction.  *Hunter*, 382 S.W.3d at 645.  In a comprehensive opinion, the Supreme Court thoroughly reviewed the facts and procedural history, and appellants' various arguments, and concluded, "[w]e find no error in the circuit court's orders and affirm."  *Id.*  The Court rejected the argument that the parties were "not adverse because they had reached agreement on the material terms of the settlement prior to the complaint being filed."  *Id.* at 650.  The Court noted that this argument disregarded "the significant fact that the settlement agreement, according to its

---

[19] William Shepherd, Daniel Crager, and Audry Hunter appealed the denial of their motions to intervene, and Shepherd and Crager also appealed the final judgment approving the settlement.  *Hunter v. Runyan*, 382 S.W.3d 643, 648 (Ark. 2011).  The South Carolina objectors did not file a motion to intervene.

express terms, also applies to the six pending cases in the federal courts." *Id.* at 650-51 (noting the parties had "a history of contentious litigation").

The Arkansas Supreme Court rejected the argument that the class definition was "too broad" and failed to account for differences in state law, making it "unfair" to residents of various states who allegedly had "advantageous" laws. *Id.* at 654. The court also considered arguments that the *Runyan* class members were inadequately represented, finding objectors "were unable to identify any reason why the class representatives could not adequately represent their interests." *Id.* at 656. The Arkansas Supreme Court also considered Hunter's argument "that the circuit court arbitrarily denied her due process right to discovery and to participate in the hearing," finding the argument "wholly without merit," concluding the class member "did have an opportunity to be heard" and that the "record support[ed] the circuit court's reasoning that the class members had previously engaged in adequate discovery." *Id.*

The Arkansas Supreme Court found that the circuit court had subject matter jurisdiction to hear the case and rejected arguments that the parties were not adverse because they had allegedly reached agreement on the material terms of the settlement before the complaint was filed. The court also found that appellant Crager had abandoned his appeal from the denial of his motion to intervene and that appellants Hunter and Shepherd's motions to intervene were procedurally defective. The court also affirmed the denial of Hunter and Shepherd's motions to intervene on the merits and found that "any interests that Hunter and Shepherd intended to assert in this case were either protected by the class representatives or by their right to opt out of the settlement class." *Id.*, 382 S.W.2d at 655. Finally, the court found that Hunter did not raise to the circuit court the due process aspect of her argument that, by preventing the intervention of objectors, the circuit court immunized its fairness determination from appellate review and thus

-28-

denied her due process.  Nevertheless, the court observed that "the concerns raised about the settlement by an objector who has been denied intervention are concerns that will receive appellate review in the context of an appeal of the denial of the motion to intervene."  *Id*. at 656.

**Defendants' Arguments in their Motions to Dismiss**.

Because Plaintiffs' action in this Court was filed well after the *Runyan* state court proceedings had ended, Defendants argue that this Court lacks subject matter jurisdiction based on the *Rooker-Feldman* doctrine.  Defendants also argue that the Plaintiffs' claims are barred by the Full Faith and Credit Act, *res judicata*, collateral estoppel, the release in the *Runyan* final judgment, the Anti-Injunction Act, and comity.  Defendants assert that this is the third attempt by Plaintiffs' counsel to reverse the *Runyan* final judgment,[20] and the seventh time counsel has objected to or attacked the *Runyan* settlement.[21] Defendants argue further that every federal court to address the *Runyan* judgment after the Arkansas Supreme Court's decision has concluded that the final judgment is entitled to full faith and credit and *res judicata* effect.[22]

---

[20] Plaintiffs' lead counsel, Tony Gould, appeared in the *Runyan* proceedings on behalf of another settlement class member and appealed to the Arkansas Supreme Court.  Mr. Gould then filed an action in the Southern District of Texas, almost identical to the Complaint in this action, asking the district court to "declare[] the *Runyan* judgment is <u>not</u> entitled to Full Faith & Credit" and "does not operate as *res judicata*."  *See* First Amended Class Action Complaint at 46 (underlining in original), in *Hunter v. Transamerica Life Ins. Co.*, Case No. 4:10-cv-04906, 2011 WL 4621111 (S.D. Tex.) (a copy of the First Amended Complaint in *Hunter* is attached to Transamerica's motion, ECF No. 19-11).  The district court in *Hunter* dismissed the action on multiple grounds including Full Faith and Credit, *res judicata*, collateral estoppel, and release, *Hunter*, 2011 WL 4621111, at *2, and the Fifth Circuit affirmed "based on the preclusive effect of the *Runyan* judgment."  *Hunter v. Transamerica Life Ins. Co.*, 498 F. App'x 430, 432 (5th Cir. 2012).

[21] In addition to challenging the settlement in the *Runyan* trial court, the Arkansas Supreme Court, the *Hunter* proceedings in the Southern District of Texas, and the Fifth Circuit, Mr. Gould's fifth attempt to attack the settlement was as *amicus curiae* at a hearing in the *Gooch* district court proceedings in which he argued that the court should enjoin the *Runyan* settlement.  *Gooch*, No. 1:07-cv-00016 (M.D. Tenn. July 14, 2009), ECF No. 321.  In his sixth attack on *Runyan*, Mr. Gould opposed a motion to stay the class allegations in his competing class action in *Lindley* pending a decision by the *Runyan* court on whether to approve the settlement.  *See Lindley v. Life Investors Ins. Co. of Am.*, 2009 WL 3296498, at *1 (N.D. Okla. Oct. 9, 2009).

[22] *See, e.g.*, *Hunter*, 2011 WL 4621111, at *2 (plaintiff's "claims are barred by *res judicata*, collateral estoppel and the release in the *Runyan* final judgment, pursuant to the Full Faith and Credit Act, 28 U.S.C. § 1738"); *Hunter*, 498 F. App'x at 440 ("The district court appropriately determined that the *Runyan* judgment is entitled to

*(footnote continued on next page)*

**DISCUSSION**

Defendants first argue that the plaintiffs' complaint must be dismissed for lack of subject matter jurisdiction pursuant to the *Rooker-Feldman* doctrine. The *Rooker-Feldman* doctrine takes its name from two decisions of the United States Supreme Court. *Dist. of Columbia Ct. of Appeals v. Feldman*, 460 U.S. 462, 482-86 (1983); *Rooker v. Fid. Trust Co*., 263 U.S. 413, 415-16 (1923); *see also Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005); *Brown & Root, Inc. v. Breckenridge*, 211 F.3d 194, 198-99 (4th Cir. 2000); *Davani v. Virginia Dept. of Transp*., 434 F.3d 712 (4th Cir. 2006); *Smalley v. Shapiro & Burson, LLP*, 526 F. App'x 231, 235-37 (4th Cir. 2013). In *Rooker*, the plaintiffs asked a federal court to declare that a state court judgment was "null and void" because it allegedly violated the Constitution. 263 U.S. at 414-15. The Supreme Court held that the district court lacked subject matter jurisdiction over the claim because "[u]nder the legislation of Congress, no Court of the United States other than [the Supreme Court] could entertain a proceeding to reverse or modify [a state court] judgment for errors of [a Constitutional] character." *Id*. at 416. In *Feldman*, the Supreme Court held that federal district courts lack authority to review final decisions of state courts because under 28 U.S.C. § 1257 such review can only be conducted by the Supreme Court. 460 U.S. at 476. As the Fourth Circuit has explained, "[t]he independence of state courts would surely be compromised if every adverse decision in state court merely rang the opening bell for federal litigation of the same issues." *Brown & Root*, 211 F.3d at 198.

---

preclusive effect and did not err in affording that judgment full faith and credit."); *Gough v. Transamerica Life Ins. Co.*, 781 F. Supp. 2d 498, 510 (W.D. Ky. 2011) ("the Court must give full faith and credit to the *Runyan* final judgment"); *Gooch v. Life Investors Ins. Co. of Am.*, 672 F.3d 402, 426 (6th Cir. 2012) ("the *Runyan* settlement carries preclusive effect under state law and complies with the federal due-process requirements for full faith and credit").

The Supreme Court narrowed the *Rooker-Feldman* doctrine in *Exxon*, holding that the doctrine applies when "the losing party in state court file[s] suit in federal court after the state proceedings [have] ended, complaining of an injury caused by the state-court judgment and seeking review and rejection of that judgment."  544 U.S. at 291.  "[T]he *Rooker-Feldman* doctrine precludes not only review of adjudications of the state's highest court, but also the decisions of its lower courts."  *Jordahl v. Democratic Party of Virginia*, 122 F.3d 192, 199 (4th Cir. 1997).

In *Davani*, the Fourth Circuit explained that the Fourth Circuit and courts nationally had given the *Rooker-Feldman* doctrine an "expansive interpretation" by applying it, not only to issues actually decided by a state court, but also to issues the state court did not decide but which were inextricably intertwined with questions decided by the state court.  The Fourth Circuit cited the *Exxon* language that *Rooker-Feldman* does not "stop a district court from exercising subject-matter jurisdiction simply because a party attempts to litigate in federal court a matter previously litigated in state court.  If a federal plaintiff presents some independent claim, albeit one that denies a legal conclusion that a state court has reached in a case to which he was a part . . . , then there is jurisdiction and state law determines whether the defendant prevails under principles of preclusion."  *Davani*, 434 F.3d at 718, citing *Exxon*, 125 S.Ct. at 1521-22, 1527.    The   Fourth Circuit  concluded that the focus of a *Rooker-Feldman* analysis, then, is on the injury that the plaintiff asks the court to redress."[I]f the state-court loser seeks redress in the federal district court for the injury caused by the state-court decision, his federal claim is, by definition, 'inextricably intertwined' with the state-court decision, and is therefore outside of the jurisdiction of the federal court."  *Davani*, 434 F.3d at 719.  However, "if the plaintiff's claim of injury rests not on the state court judgment itself, by rather on the alleged violation of his

constitutional rights [by the defendant]", then *Rooker-Feldman* does not apply.  *Id*. at 718-719,

citing *Washington v. Wilmore*, 407 F.3d 274, 280 (4th Cir. 2005), a post-*Exxon* decision.

Because the *Rooker-Feldman* doctrine concerns the Court's jurisdiction over this action,

it must be addressed before the defendants' other arguments for dismissal.  *Friedman's, Inc. v.*

*Dunlap*, 290 F.3d 191, 196 (4th Cir. 2002) ("Because the *Rooker-Feldman* doctrine is

jurisdictional, we are obliged to address it before proceeding further in our analysis.").

The Court will first address whether the plaintiff's first cause of action for declaratory

relief is barred by *Rooker-Feldman*.  Plaintiffs contend that the Supreme Court has "repeatedly

recognized" a class member's standing to collaterally attack class action settlements, citing

*Phillips Petroleum Co. v. Shutts*, 472 U.S. 797 (1985) and *Matsushita Elec. Ind. Co. v. Epstein*,

516 U.S. 367 (1996).  ECF No. 30, at p. 32.  A split of authority exists as to "the proper scope of

a federal court's collateral review of a state court's class action judgment for satisfaction of these

due process requirements." *Hege v. Aegon USA, LLC*, 780 F. Supp. 2d 416, 426 (D.S.C. 2011).

While the Fourth Circuit has not yet had the opportunity to decide the question, United States

District Judge G. Ross Anderson considered in *Hege* a virtually identical collateral attack on the

same *Runyan* Judgment, and concluded that a broader, merits-based scope of collateral review

"presents the appropriate scope of analysis."  *Hege*, 780 F. Supp. 2d at 426.  However, this

Court's research reveals at this time that the majority view favors a more limited collateral

review.  *See Gough v. Transamerica Life Ins. Co*., 781 F.Supp.2d 498, 506 (W.D. Ky. 2011),

cited in 2 McLaughlin on Class Actions, Section 6:30 (11th ed.). "*Gough* followed the majority

rule that 'the reviewing court may not 'reconsider[] . . . the merits of the claim or issue,' but

rather may only consider whether absent class members' due process rights were 'protected by

the **adoption of the appropriate procedures** by the certifying court,' in which case the original

-32-

judgment is entitled to full faith and credit.' The court therefore confined its review for purposes of determining whether to accord full faith and credit to the prior judgment to 'whether the procedures in the prior litigation afforded the party against whom the earlier judgment is asserted a ' full and fair opportunity' to litigate the claim or issue,' requiring the court to determine (1) whether there were safeguards in place to guarantee sufficient notice and adequate representation; and (2) whether such safeguards were, in fact, applied." (emphasis added) *Gough* quoted *Epstein v. MCA, Inc*., 179 F.3d 641, 649 (9th Cir. 1999) and *Hospitality Management Associates, Inc. v. Shell Oil Co*., 356 S.C. 644, 591 S.E.2d 611, 619 (2004). In *Hospitality Management*, the South Carolina Supreme Court reviewed cases and concluded that "only a limited collateral review is appropriate. "It would run counter to the class action goals of efficiency and finality to allow successive reviews of issues that were, in fact, fully and fairly litigated in the rendering court." McLaughlin refers to *Hege* as "a high water mark in the scope of collateral review of a prior judgment entered on a class action settlement." McLaughlin, *supra*, at 9. In the case at bar, the plaintiffs in their declaratory judgment action are seeking to bring an independent action to collaterally attack the Runyan judgment on constitutional grounds. Therefore, the Court denies the motion to dismiss the claim for declaratory relief on the basis of the *Rooker-Feldman* doctrine and finds that it has subject matter jurisdiction over the cause of action for declaratory relief.

The Court will next turn to the question whether this Court lacks subject matter jurisdiction under the *Rooker-Feldman* doctrine over the breach of contract and bad faith claims. Plaintiffs first argue that the *Rooker-Feldman* doctrine should not apply because Plaintiffs were not "true parties" to the *Runyan* proceedings in Arkansas. ECF No. 30, at pp. 32-33. Plaintiffs rely on *Hege*, in which the district court held in an interlocutory order which was never appealed

that two absent class members in the Arkansas action should not be treated as "true parties" because settlement class members had no appellate rights under Arkansas law unless they intervened, even if they had objected to the settlement.  780 F. Supp. 2d at 422-23 (finding because neither of the plaintiffs "intervened in the litigation" Arkansas law "bars Plaintiffs from challenging the Order on direct appeal").[23]  In *Hunter v. Runyan*, the Arkansas Supreme Court re-affirmed previous cases which had held that an objecting class member has appellate rights and may exercise those rights by moving to intervene and appealing the denial of any such motion:

> In such an appeal, [the class member] would receive appellate review of the issues related to the settlement that he seeks.  For example, the issue of whether his due-process rights are violated by our requirement that he first intervene to obtain standing to appeal the settlement would arise in the context of the appeal of the denial of his motion to intervene. . . .  As another example, the issue of whether his interest was adequately represented by the class and class counsel would . . . arise in the context of whether [he] had an interest that was inadequately represented by the parties to warrant intervention under Rule 24.

382 S.W.3d at 652.  In *Runyan*, objecting class members argued to the Arkansas Supreme Court that the *Runyan* trial court's denial of intervention to objecting absent class members "immunized its fairness determination from appellate review and thus denied . . . objectors' due-process rights."  *Id*. at 656.  The Arkansas Supreme Court expressly rejected that argument:

> As for her argument concerning the circuit court's immunizing from appellate review its decision to approve the settlement, we reiterate our previous observation that the concerns raised about the settlement by an objector who has been denied intervention are concerns that will receive appellate review in the context of an appeal of the denial of the motion to intervene.

---

[23] Unlike this case, *Hege* was filed before the *Runyan* state court proceedings ended and was a concurrent proceeding.  Accordingly, *Rooker-Feldman* did not apply.  This action was commenced several years after the *Runyan* proceedings, including all appeals, were concluded.

*Id.* The Arkansas Supreme Court thus made it clear that absent class members in an Arkansas class action have the opportunity to seek appellate review of any objections to a settlement, including due process objections. *Id.* at 651-52. The Arkansas Supreme Court's opinion removes any doubt that Plaintiffs and other *Runyan* class members had appellate rights in the state court proceeding.

Plaintiffs also rely on *Lance v. Dennis*, 546 U.S. 459 (2006). *Lance*, however, did not involve a state court class action, or settlement class members who could opt-out, remain in the proceeding and raise objections, or pursue intervention and a subsequent appeal. 546 U.S. at 460-61, 465-66. *Lance* involved true non-parties to the judgment at issue, citizens of the State of Colorado who were not class members and who did not participate in the prior state court proceeding at all. Unlike the members of a certified class, the non-parties in *Lance* were not bound by the judgment and had no participation or appellate rights in the prior proceeding. *Id.* at 461. The *Rooker-Feldman* doctrine did not deprive the federal court of subject matter jurisdiction because the non-parties in *Lance* were strangers to the prior state court proceeding. *Id. Lance* does not address whether the *Rooker-Feldman* doctrine applies to class members who are bound by the state court judgment and who had participation and appellate rights in the state court.

At oral argument, Plaintiffs' counsel cited to the Fourth Circuit's opinion in *Holliday Amusement Co. of Charleston v. South Carolina*, 401 F.3d 534 (4th Cir. 2005), and argued that it mandates that this Court reject application of *Rooker-Feldman* in this case. Tr. at 48. *Holliday*, however, is inapposite. Like *Lance*, it did not involve a class action case or settlement, and the federal plaintiff in *Holliday* was not a party to the state court proceeding. 401 F.3d at 536 (finding *Rooker-Feldman* did not apply where federal court plaintiff was not a party to prior state

court proceeding in which certain owners and lessees had lost their attempt to challenge a state statute making it illegal to possess video gaming machines).  The plaintiff in *Holliday* was a complete stranger to the prior state court proceeding.  *Id*. at 538.  Here, the Plaintiffs were *Runyan* class members who received a class settlement notice and made a decision to remain in the class, participate in the settlement, and accept the benefits of the settlement.  Plaintiffs and class members had participation rights and were able to file claims, obtain benefits, object, appear at hearings, and appeal.  The plaintiff Weavers did not opt out, object to the settlement, or move to intervene.  They have enjoyed the benefits of the settlement for several years.

The *Rooker-Feldman* doctrine prohibits a litigant from instituting a federal action which, although not designated as an appeal, "amounts to nothing more than an attempt to seek review of [the state court's] decision by a lower federal court."  *Plyler v. Moore*, 129 F.3d 728, 733 (4th Cir. 1997).  Here, in the breach of contract and bad faith causes of action, Plaintiffs ask this Court to review the state court proceedings and make contrary rulings.  Thus, *Rooker-Feldman* deprives this Court of subject matter jurisdiction over those claims.  Plaintiffs' alleged injury flows directly from the *Runyan* final judgment.  Plaintiffs would have this Court  reverse factual findings and legal conclusions made by the state court, and enter a contradicting judgment.  *See Smalley*, 526 F. App'x at 235 ("A litigant may not circumvent . . . jurisdictional mandates by instituting a federal action which, although not styled as an appeal, amounts to nothing more than an attempt to seek review of [the state court's] decision by a lower federal court.") (quotations and citations omitted).  Therefore, the Court grants the defendants' motion to dismiss the breach of contract and bad faith claims on the basis of the *Rooker-Feldman* doctrine.

**The Full Faith and Credit Act**

Even if the *Rooker-Feldman* doctrine does not apply to any of Plaintiffs' claims, Transamerica argues that the *Runyan* judgment is entitled to full faith and credit, and that all of Plaintiffs' claims are barred by *res judicata*, collateral estoppel, and the release in the *Runyan* final judgment.  The Court agrees.

In *Matsushita Electric Industrial Co. v. Epstein*, 516 U.S. 367, 374 (1996), the U.S. Supreme Court directly held that "a judgment entered in a class action, like any other judgment entered in a state judicial proceeding, is presumptively entitled to full faith and credit under the express terms of the [Full Faith and Credit] Act."  The Court explained that "[t]he Full Faith and Credit Act mandates that the 'judicial proceedings' of any State 'shall have the same full faith and credit in every court within the United States . . . as they have by law or usage in the courts of such State . . . from which they are taken.'"  *Id.* at 373 (quoting 28 U.S.C. § 1738).

> The Act thus directs all courts to treat a state court judgment with the same respect that it would receive in the courts of the rendering state.  Federal courts may not "employ their own rules . . . in determining the effect of state judgments," but must "accept the rules chosen by the State from which the judgment is taken."

*Id.* (quoting *Kremer v. Chem. Constr. Corp.,* 456 U.S. 461, 481-82 (1982).[24]

In *Kremer,* the Supreme Court set forth a federal court's standard of review under the Full Faith and Credit Act:  "state proceedings need do no more than satisfy the *minimum procedural requirements* of the Fourteenth Amendment's Due Process Clause in order to qualify for the full faith and credit guaranteed by federal law."  *Kremer*, 456 U.S. at 481 (emphasis added).  *See Hansberry v. Lee*, 311 U.S. 32,42 (1940) ("With a proper regard for divergent local

---

[24] The Full Faith and Credit Act "was enacted to implement the Full Faith and Credit Clause" of the U.S. Constitution, "and specifically to insure that federal courts, not included within the constitutional provision, would be bound by state judgments."  *Kremer*, 456 U.S. at 483, n.24 (citations omitted).  The Act embodies the fundamental constitutional interests of comity and federalism which are a "bulwark of the federal system."  *Id*. at 466, n.6 (citations omitted).

institutions and interests, this Court is justified in saying that there has been a failure of due process only in those cases where it cannot be said that the procedure adopted, fairly insures the protection of the interests of absent parties who are to be bound by it.") (citations omitted)

In *Phillips Petroleum Co. v. Shutts*, the Supreme Court defined what constitutes minimum procedural due process:

> The plaintiff must receive notice plus an opportunity to be heard and participate in the litigation, whether in person or through counsel. The notice must be the best practicable, "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." The notice should describe the action and the plaintiffs' rights in it. Additionally, we hold that due process requires at a minimum that an absent plaintiff be provided with an opportunity to remove himself from the class by executing and returning an "opt out" or "request for exclusion" form to the court. Finally, the Due Process Clause of course requires that the named plaintiff at all times adequately represent the interests of the absent class members.

472 U.S. 797, 811-12 (1985) (citations omitted). Accordingly, minimum procedural due process requires notice of the pendency of the action, a description of the action, an opportunity to object and opt out, and adequate representation. *See, e.g., Gough v. Transamerica Life Ins. Co.*, 781 F. Supp. 2d 498, 504-07 (W.D. Ky. 2011) (applying *Shutts* and holding the *Runyan* court satisfied due process requirements).

As the Fourth Circuit explained in *Lawson v. Dixon*, 1994 WL 258629, at *4 (4th Cir. June 13, 1994), "under *Kremer*, we can examine only those aspects of the previous case that implicate procedural due process in determining whether to give preclusive effect to the prior state adjudication." Even where a federal court believes that a state court's judgment is wrong, the court is not permitted to deny full faith and credit. *See, e.g., Lawson*, 1994 WL 258629, at *4 ("other errors that may be disclosed in our review of the state court case must be passed over, for if we were to begin to investigate these, we would bring ourselves back into *Feldman* territory

-38-

for certain"); *Conopco, Inc. v. Roll Int'l*, 231 F.3d 82, 88 (2d Cir. 2000) ("even if the trial court's

decision were erroneous, it would not create a due process claim ....  It is black-letter law that

due process guarantees a fair hearing, not a legally correct outcome ....  Accordingly, the trial

court's judgment is entitled to the full faith and credit guaranteed by 28 U.S.C. § 1738.")

(emphasis omitted).[25]

The filings that the Court has considered from the *Runyan* record are admissible at this

stage under Fed. R. Evid. 201(d), which provides that the "court may take judicial notice at any

stage of the proceeding."  The Full Faith and Credit Act provides:  "The records and judicial

proceedings of any court of any such State . . . shall be proved or admitted in other courts within

the United States and its Territories and Possessions by the attestation of the clerk and seal of the

court annexed, if a seal exists, together with a certificate of a judge of the court . . ."  28 U.S.C.

Section 1738.

### 1.    Application to the *Runyan* Judgment

Five federal courts, including two U.S. Courts of Appeal, have held that the *Runyan* final

judgment is entitled to full faith and credit.  *See Hunter*, 498 F. App'x at 435 (rejecting argument

that *Runyan* judgment was not entitled to preclusive effect and finding that Hunter had received

notice and an opportunity to be heard in *Runyan*); *Hunter v. Transamerica Life Ins. Co.*, 2011

WL 4621111, at *1-2 (S.D. Tex. Sept. 27, 2011) (affording full faith and credit to *Runyan* final

judgment); *Hall v. Equity Nat'l Life Ins.*, 730 F. Supp. 2d 936, 944 (E.D. Ark. 2010) (denying

class certification to proposed named plaintiff who had opted out of *Runyan* and holding *Runyan*

---

[25] *See also Salazar v. United States Air Force*, 849 F.2d 1542, 1548 (5th Cir. 1988) ("Under § 1738, we can inquire no further.  No matter how intrinsically erroneous the [Texas] state district court's unappealed judgment ... that judgment is conclusively binding on the parties in this case."); *Kiowa Tribe of Okla. v. Lewis*, 777 F.2d 587, 592 (10th Cir. 1985) ("Regardless of whether we agree with the Kansas Supreme Court's construction … we must honor the judgment.").

judgment was "fully contested in good faith" and entitled to full faith and credit); *Gough*, 781 F. Supp. 2d at 507 ("Based on a review of the record, the Court concludes that the minimal due process requirements identified in *Shutts* were fully and fairly litigated in the *Runyan* court."); *Gooch v. Life Investors Ins. Co. of Am.*, 672 F.3d 402, 418, 424 (6th Cir. 2012) (holding that the *Runyan* notice "met the due-process baseline" and that "the notice was not so misleading that it failed to apprise potential class members of their rights .")

The Court has reviewed the process and procedure employed by the *Runyan* court in detail as discussed hereinabove. The *Runyan* court approved a notice and notice plan to ensure that all settlement class members received a comprehensive written notice of the settlement, which described the nature of the dispute and included an opportunity to opt out or to remain in the settlement and object, and an opportunity to appear and be heard. Plaintiffs here admit that they received the notice, but did not opt out. (Tr. of June 2, 2015 motions hearing before this Court, ECF No. 44, p. 37) The record reflects that a number of settlement class members took full advantage of their opportunity to be heard. The *Runyan* court held a preliminary approval hearing, three other hearings, and a fairness hearing, and objectors and other class members were given the opportunity to make any motions and arguments they desired.[26] The *Runyan* court supervised eight months of contested proceedings and entered 63 pages of findings of fact and conclusions of law in connection with its final judgment. The *Runyan* court reviewed the adequacy of the notice and the adequacy of representation in connection with its analysis under Rule 23, and in response to objections and challenges by class members. In addition, all class members had the opportunity to file a motion to intervene and to appeal any complaints

---

[26] The *Runyan* court allowed Plaintiffs' counsel Tony Gould to argue at a hearing on October 1, 2009, during which Mr. Gould entered 22 exhibits into evidence. ECF No. 19-8, at p. 172.

regarding the settlement, through the granting or denial of their motion to intervene, to the Arkansas Supreme Court.  This Court agrees with the other courts that have held the *Runyan* proceedings satisfied the minimum procedural requirements of due process necessary for full faith and credit.

**Plaintiffs' Arguments to Avoid Full Faith and Credit**

Plaintiffs argue, however, that the Court should refuse to afford the *Runyan* judgment full faith and credit because (1) the class notice was misleading, (2) the Plaintiffs did not receive adequate representation in the *Runyan* proceedings, and (3) absent class members were not given the right to be heard and object to the proposed settlement.

**Class Notice**

Pursuant to *Shutts*, to satisfy due process, a class action settlement notice must be "reasonably calculated . . . to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections and to opt out."  *Shutts*, 472 U.S. at 812; *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950); *see also Grunin v. Int'l House of Pancakes*, 513 F.2d 114, 122 (8th Cir. 1975) (notice "may consist of a very general description of the proposed settlement, including a summary of the monetary and other benefits that the class would receive and an estimation of attorneys' fees and other expenses" and should "emphasize that the court is expressing no opinion on the merits of the case").  "Within the bounds of due process, the form that such notice is to take is left to the discretion" of the trial court.  *Tennille v. W. Union Co.*, 785 F.3d 422, 436 (10th Cir. 2015) (internal citations and quotation marks omitted).  According to the Manual for Complex Litigation:

> The notice should announce the terms of a proposed settlement and state that, if approved, it will bind all class members.  If the class has been certified only for settlement purposes, that fact should be disclosed.  Even though a settlement is proposed, the notice should outline the original

claims, relief sought, and defenses so class members can make an informed decision about whether to opt out.

Manual for Complex Litigation (Fourth) § 21.312. The Court has reviewed the notice in detail, and the *Runyan* court's related findings[27] and agrees with the courts in *Gooch*, *Hunter,* and *Gough* that the notice satisfied the minimum requirements of due process.

Plaintiffs argue, however, that the notice was misleading. The Complaint does not allege that the Plaintiffs actually read the notice when they received it, or that they were in fact misled by any particular provision. Instead, the Complaint makes general allegations that the notice violated the due process rights of the entire *Runyan* class nationwide. The Complaint (ECF No. 1, at pp. 32-33 ¶ 130) refers to the following provision in the notice, which appears in the section of the notice describing the settlement's "Non-Monetary Benefits":

> **"Actual Charges" Benefits.** The Company will be required to pay all claims for Actual Charges Benefits consistent with the definition of "actual charges" as the amount legally owed to the provider, which is consistent with the current definition of "actual charges" in Section 38-71-[2]42(A) of the South Carolina Code and similar laws in Oklahoma, Georgia, and Texas. The parties expect this to confer a substantial benefit on the Class by lessening the amount and frequency of future premium increases.

ECF No. 19-9, at p. 11 (p. 7 of notice). According to Plaintiffs, this provision was misleading because it "falsely represented that this construction of 'actual charges' was consistent with 'current' South Carolina law." ECF No. 1, at pp. 32-33 ¶ 130.

---

[27] In its final judgment, the *Runyan* court found that "the Notice Plan, including the distribution of the written Notice by mail, issuance of the Publication Notice, and creation of the Internet website, in accordance with the Settlement Agreement and this Court's Preliminary Approval Order," "constituted the best notice practicable under the circumstances to Settlement Class members," "constituted notice that was reasonably calculated, under the circumstances, to apprise Settlement Class members of the pendency of the Action, how the Settlement would affect them, their right to exclude themselves from the Settlement, and their right to object to the Settlement and appear at the Fairness Hearing," "was reasonable and constituted due, adequate, and sufficient notice," and "fully satisfied the requirements of Arkansas Rule of Civil Procedure 23, the due process requirements of the United States Constitution, and other applicable law." Final Judgment at 4 ¶ 5.

For several reasons, the Court finds the Plaintiffs' arguments unpersuasive.  First, the cited provision accurately describes what the settlement provides, i.e., the settlement requires Transamerica to pay "Actual Charges Benefits" consistent with the definition of "Actual Charges" in the settlement as the "amount legally owed to the provider."  In addition, the settlement definition of "Actual Charges" at the time the notice was mailed on May 14, 2009 was consistent with the definition of "actual charges" in the South Carolina state statute, which was effective on June 4, 2008.  Indeed, the *Runyan* court expressly found as follows:

> The Settlement provision governing the payment of Actual Charges Benefits going forward is a fair, adequate, and reasonable method of resolving any alleged ambiguity regarding how "actual charges" should be interpreted under the Policies.  Indeed, this provision is consistent with the definition of "actual charges" in five state statutes.

Findings at 17 ¶ 6 & n.13 (citing statutes).[28]

Second, the provision describing how Actual Charges Benefits would be paid under the settlement does not purport to provide legal advice or describe the Plaintiffs' claims or the parties' positions on the merits.  Rather, it is part of the answer to the question: "What type of benefits does the Settlement provide to Settlement Class Members?"  ECF No. 19-9, at p. 10 (p. 6 of notice).  The notice contains a separate preceding section which answers the question: "What is this lawsuit about?"  ECF No. 19-9, at pp. 9-10 (pp. 5-6 of notice).  It was not incumbent upon the *Runyan* court to resolve the merits of the plaintiffs' case in evaluating the

---

[28] S.C. CODE ANN. § 38-71-242 (defining "actual charges" as the lower of (a) the amount the healthcare provider "agreed to accept, pursuant to a network or other agreement with a health insurer," as payment in full or (b) the amount the provider "agreed or is obligated by operation of law to accept as payment in full"); GA. CODE ANN. § 33-24-16.1 (the term "actual charge" or "actual fee" "when used in an individual or group specified disease insurance policy, shall mean the amount actually paid by or on behalf of an insured person and accepted as full payment by a health care provider or other designated person for the goods or services provided"); OKLA. STAT. ANN. tit. 36, § 3651 (as used in a specified disease insurance policy, "actual charge" or "actual fee" means "the amount actually paid by or on behalf of the insured and accepted by a provider for services provided"); TEX. INS. CODE ANN. § 1201.0601 ("the amount actually paid by or on behalf of the insured and accepted by a provider for services provided"); MO. ANN. STAT. § 376.789 (defining "actual charge" as the amount a medical provider "[a]grees, or is obligated by operation of law, to accept as payment in full").

notice. *S.C. Nat'l Bank v. Stone*, 139 F.R.D. 335, 339 (D.S.C. 1991) (in weighing the fairness of the settlement "a court is not to decide the merits of the case or to attempt to resolve unsettled factual or legal questions") (citations omitted).

To the extent Plaintiffs argue that the notice was required to discuss case law favorable to plaintiffs or disadvantageous to defendants, "[d]ue process does not require the notice to set forth every ground on which class members might object to the settlement." *Gooch*, 672 F.3d at 423 (rejecting argument that *Runyan* notice violated due process) (quotations omitted).[29]  The notice adequately described the nature of the dispute and the claims and defenses of the parties.  ECF No. 19-9, at pp. 9-10 (pp. 5-6 of notice).  The *Runyan* court reviewed the state of the law and concluded:    "The merits of the Plaintiffs' case, when weighed against the terms of the Settlement, favor final approval of the Settlement.  The possibility of Plaintiffs litigating this case on a class basis through judgment is highly uncertain and would involve expensive, time-consuming continued litigation, whereas the overall value of the Settlement is significant." Findings at 26 ¶ 4.[30]  Due process did not mandate that the notice in *Runyan* refer to caselaw or predict class members' chances of winning the litigation on the merits.

---

[29] *See also Adams v. S. Farm Bur. Life Ins. Co.*, 493 F.3d 1276, 1287-88 (11th Cir. 2007) (notice that did not describe an "increasing premium" theory of liability advanced by plaintiffs nevertheless complied with due process and was not misleading); *Rodriguez v. West Publ'g Co.*, 563 F.3d 948, 962 (9th Cir. 2009) ("While the Notice does not detail the content of objections ..., we do not see why it should.").

[30] Most, if not all, of Plaintiffs' argument relates to South Carolina law.  Defendants disagree that the law was settled in plaintiffs' favor when the *Runyan* court approved the settlement.  Defendants point out that the South Carolina "actual charges" statute became effective June 4, 2008 and directed that *all* claims administered after that date must be paid consistent with the statutory definition.  S.C. CODE ANN. § 38-71-242(C).  Defendants also note that, in 2008, the South Carolina Insurance Department issued Bulletin 2008-15, which instructed insurers that, after the effective date, they "'may not pay any claim or any benefit in excess of the amount specified in S.C. CODE ANN. 38–71–242.'"  It was not until 2014, when the South Carolina Supreme Court issued its opinion in *Kirven v. Cent. States Health & Life Co.*, 760 S.E.2d 794, 801 (S.C. 2014), in response to two certified questions from a federal district court, that the retroactive effect of the "actual charges" statute was finally resolved under South Carolina law.  In *Kirven*,  the South Carolina Supreme Court held that application of Section 38-71-242 to insurance contracts entered into before the statute's effective date would violate the Contract Clause of the state and federal constitutions.  Courts in Oklahoma and Texas, however, held that their actual charges statutes apply retroactively.

*(footnote continued on next page)*

Plaintiffs also argue that the notice was misleading because it "falsely suggested that Defendants had viable claims or counterclaims for overpayment of benefits against its policyholders." ECF No. 1, at p. 33 ¶ 130 (emphasis omitted). Plaintiffs are referring to the following section of the notice:

> **Waiver of Claims Against Settlement Class Members.** The Company will agree to waive and not pursue any claims or counterclaims for overpayment of benefits that the Company might otherwise have against any Settlement Class Members as of the date of the Final Order and Judgment.

ECF No. 19-9, at p. 12 (p. 8 of notice). According to Plaintiffs, this provision "made the deceptive and misleading threat" that settlement class members "would expose themselves to a lawsuit" unless they remained in the settlement. ECF No. 1, at p. 33 ¶ 133. The Court rejects this characterization of the notice for several reasons. First, the provision accurately describes Section 3(b)(vi) of the Class Action Settlement Agreement, negotiated by the parties, under which Transamerica agreed to waive any claims for overpayments against settling class members. ECF No. 19-5, at p. 87 (Section 3(b)(vi) of Settlement Agreement). Second, Transamerica had in fact asserted counterclaims to recover overpayments in other actions.[31] Consequently, the waiver of any such claims was a benefit to the settlement class members that was properly described in the notice and was not misleading.

---

*See, e.g.*, *Lindley v. Life Investors Ins. Co. of Am.*, 2010 WL 723670, at *8 (N.D. Okla. Feb. 22, 2010) (holding Oklahoma "actual charges" statute applied retroactively and did not violate the Contract Clause of the United States Constitution); *Hunter v. Transamerica Life Ins. Co.*, 498 F. App'x 430, 438 (5th Cir. 2012) (holding Texas "actual charges" statute applied to *Runyan* Class member's policy and claims submitted after the effective date even though the policy was issued many years before the statute was enacted).

[31] *See, e.g.*, *Gooch v. Life Investors Ins. Co.*, 2009 WL 7026071 (M.D. Tenn. Feb. 24, 2009) at ¶ 89 (breach of contract counterclaim for damages for alleged "overpayments to the counterclaim defendant in an amount to be proven at trial"); *Lindley v. Life Investors Ins. Co.*, 267 F.R.D. 382, 398 (Feb. 17, 2010) (summarizing counterclaims for breach of contract, bad faith, and unjust enrichment contending policyholder "has been overpaid" and "should not be allowed to retain the excess").

In sum, the Court disagrees that Plaintiffs' arguments regarding the notice establish a due process violation that would allow Plaintiffs to avoid full faith and credit.

**Adequacy of Representation**

Relying heavily on *Hege*, Plaintiffs also allege that the *Runyan* proceedings violated due process because class counsel did not adequately represent the settlement class.[32]   Plaintiffs argue that "Class Counsel had [a] stark financial conflict of interest with absent class members and breached their fiduciary obligations to absent class members by colluding with Defendant." ECF No. 30, at p. 29.   However, this Court has already rejected the broad, "merits-based" collateral review espoused by *Hege* in favor of a collateral review simply to determine whether the Arkansas state court used adequate procedures to satisfy *Shutts*.   The Court first notes that it is unclear whether "adequacy of representation" in this context even includes adequacy of counsel, as *Shutts* refers to whether the **named plaintiff** adequately represented the class.   *Shutts,* 472 U.S. at 812.   However, even assuming that adequacy of representation by counsel must be shown under the minimum due process review[33], a review of the *Runyan* findings would dictate a conclusion that class counsel provided adequate representation.   Under Fed. R. Civ. P. 23, for example, the court must evaluate "whether class counsel are qualified, experienced, and generally able to conduct the proposed litigation."   *Lott v. Westinghouse Savannah River Co.*,

---

[32] ECF No. 30, at p. 11 (citing *Hege*, 780 F. Supp. 2d at 439) (interlocutory order denying defendant's motion for summary judgment).   This is contrary to the position taken by at least one of Plaintiffs' current counsel in the *Runyan* proceeding.   ECF No. 19-8, at p. 170 (p. 12 of Transcript of October 1, 2009 hearing, argument of counsel for objector/intervenor Audry Hunter) ("I will submit to you that the counsel representing the settling plaintiffs are competent and adequate counsel.   Mrs. Hunter doesn't have any objection with the competency of plaintiffs' counsel.").

[33] *See AmChem Products, Inc. v. Windsor*, 521 U.S. 591 at 626 n. 20 (1997). The adequacy of representation requirement in a class certified under Fed. R. Civ. P. 23 generally encompasses whether the representative parties were adequate and whether counsel was adequate to represent the class.   *Lott v. Westinghouse Savannah River Co.*, 200 F.R.D. 539, 561 (D.S.C. 2000).

200 F.R.D. 539, 561 (D.S.C. 2000). The Arkansas court reviewed the qualifications of class counsel and found they were fully qualified. Specifically, Judge Moody found that the parties were "represented by experienced class action counsel who worked diligently negotiating the settlement at arms' length in an adversarial setting to ensure that the Settlement Agreement was fair, reasonable, and adequate . . . The Court finds further that the Settlement was negotiated in good faith and there was not collusion or 'reverse auction' of any kind in the negotiation of the Settlement." Findings at 14 ¶ 7. It is also clear that the Arkansas procedures provided adequate mechanisms for challenging the adequacy of representation.

**Full and Fair Opportunity to Object**

Plaintiffs assert that the *Runyan* trial court utilized procedures which deprived class members of the opportunity to evaluate the proposed settlement and meaningfully oppose it. They also assert that appellate review of the settlement approval was not available. To the contrary, the Arkansas Supreme Court explained the manner under Arkansas law in which appeal could be taken. An unnamed class member could move to intervene and, if the motion was denied, appeal the denial of the motion. As part of his appeal of the denial of the motion to intervene, he "would receive appellate review of the issues related to the settlement that he seeks." *Hunter v. Runyan*, 382 S.W.3d at 16. For example, "the issue of whether his interest was adequately represented by the class and class counsel would . . . arise in the context of whether Crager had an interest that was inadequately represented by the parties to warrant intervention under (Ark.) Rule 24." *Id*. Therefore, it is clear that a procedure was available under Arkansas law for an unnamed class member to attempt to challenge the settlement. Here, the Weavers did not opt out of the class, did not file a motion to intervene, and filed no objections to the settlement. Instead, they waited for years after the settlement was approved and

other individuals pursued appeals to attempt to bring another class action on the same basis against the same defendants.

A review of the procedures utilized in *Runyan* shows that they were sufficient to afford absent class members such as the Weavers with minimum procedural due process. Therefore, this Court rejects the plaintiffs' arguments that the *Runyan* judgment should not be accorded full faith and credit on the basis of failure to meet due process requirements.

### Res Judicata

Under the Full Faith and Credit Act, "Congress has specifically required all federal courts to give preclusive effect to state-court judgments whenever the courts of the State from which the judgments emerged would do so." *Kremer v. Chem. Constr. Corp.*, 456 U.S. 461, 482 (1982) (quoting *Allen v. McCurry*, 449 U.S. 90, 96 (1980)). As the district court in *Gough* observed, in this case, given "the Arkansas Supreme Court's review of the *Runyan* final judgment, there can be no question that Arkansas will fully enforce the judgment." *Gough*, 781 F. Supp. 2d at 510.

Arkansas law holds that "a valid and final judgment rendered on the merits by a court of competent jurisdiction bars another action by the plaintiff or his privies against the defendant or his privies on the same claim." *Barclay v. Waters*, 182 S.W.3d 91, 95 (Ark. 2004) (citing *Carwell Elevator Co. v. Leathers*, 101 S.W.3d 211 (Ark. 2003)). "*Res judicata* bars not only the re-litigation of claims which were actually litigated in the first suit, but also those which could have been litigated." *Barclay*, 182 S.W.3d at 95-96. Arkansas law applies *res judicata* when: (1) the first suit resulted in a final judgment on the merits; (2) the first suit was based upon proper jurisdiction; (3) the first suit was fully contested in good faith; (4) both suits involve the same claim or cause of action; and (5) both suits involve the same parties or their privies. *Bailey*

*v. Harris Brake Fire Prot. Dist.*, 697 S.W.2d 916, 917 (Ark. 1985) (citing *Wells v. Ark. Pub. Serv. Comm'n*, 616 S.W.2d 718 (Ark. 1981)).

The *Runyan* final judgment satisfies all requirements for application of *res judicata* under Arkansas law.  *See Hunter*, 2011 WL 4621111, at *2 (plaintiff's individual and class "claims are barred by *res judicata*, collateral estoppel, and the release in the *Runyan* final judgment, pursuant to the Full Faith and Credit Act"), *aff'd by Hunter*, 498 F. App'x at 432 ("We AFFIRM the district court's judgment dismissing the [*Hunter*] lawsuit based on the preclusive effect of the *Runyan* judgment."); *Gooch*, 672 F.3d at 419 ("The Arkansas Supreme Court has disposed of Gooch's [subject matter jurisdiction and *res judicata*] arguments, making us certain that Arkansas would give preclusive effect to its judgment."); *Gough*, 781 F. Supp. 2d at 510 ("Considering the Arkansas Supreme Court's review of the *Runyan* final judgment, there can be no question that Arkansas will fully enforce the judgment. "); *Hall v. Equity Nat'l Life Ins. Co.*, 730 F. Supp. 2d 936, 944 (E.D. Ark. 2010) ("[T]he *Runyan* judgment is entitled to the same respect in this Court that it would receive in the courts of the State of Arkansas," and finding the "class allegations are barred by both *res judicata* and collateral estoppel.").  As all these courts have recognized, given the Arkansas Supreme Court's review and affirmance, there can be no question that Arkansas law would give preclusive effect to the *Runyan* Final Judgment.

The *Runyan* Final Judgment dismissed all claims "on the merits and with prejudice as to all Settlement Class members who did not request exclusion from the Settlement Class . . . ."  Final Judgment at 11 ¶ 14.   The existence of the *Runyan* final judgment clearly and unequivocally satisfies the first prong of *res judicata*.  *Francis v. Francis*, 31 S.W.3d 841, 846 (Ark. 2000) ("Dismissal with prejudice is as conclusive of the rights of the parties as if there were an adverse judgment as to the plaintiff after a trial," and holding that a settlement "was a

final adjudication on the merits of 'all matters in controversy between the parties.'").  The final judgment was also based on proper jurisdiction.  The Supreme Court of Arkansas expressly affirmed that the *Runyan* court had subject matter jurisdiction under Arkansas law.  *Hunter*, 382 S.W.3d at 650 ("[T]here can be no question that the circuit court certainly had subject-matter jurisdiction to review and approve or not approve the settlement reached in this case.").  Accordingly, the second prong of *res judicata* is satisfied.

With respect to the third prong, Plaintiffs' Complaint in this action and the *Runyan* action involve the same cancer insurance policies, construction of the same policy provisions regarding "actual charges," and the same allegations that Transamerica underpaid or caused a "reduction in benefits" for "actual charges."  *Compare* ECF No. 1, at pp. 8, 17 ¶¶ 31, 75 (Transamerica has paid plaintiffs' "actual charges" benefits by paying claims based upon a "reduced" amount accepted by plaintiffs' medical provider) *with* ECF No. 19-3, at pp. 15-20 (*Runyan* Complaint ¶¶ 29-31, 33, 39).  There is no question that this action and the *Runyan* action involve the same subject matter, claims, and cause of action.

Finally, the *Runyan* action involved the same parties or their privies.  Plaintiffs in this case concede that they are *Runyan* settlement class members, and the Complaint purports to assert claims on behalf of a class defined to encompass the *Runyan* settlement class members.  *Compare* ECF No. 1, at p. 4 ¶ 18 *with* Final Judgment at ¶ 3.  Accordingly, the final element for applying *res judicata* under Arkansas law is satisfied, and Plaintiffs' claims asserted in this action are precluded.[34]

---

[34] The plaintiffs contend that res judicata is an affirmative defense that cannot be raised on a motion to dismiss. However, numerous cases in the Fourth Circuit have allowed such a challenge.  *See Field; Chaudery v. Stevens*, 2005 WL 1923231, at *4 (facts may be judicially noticed by court "entertaining a motion to dismiss on the ground of *res judicata* or collateral estoppel").

**Collateral Estoppel**

Under Arkansas law, Plaintiffs' claims are also barred by collateral estoppel or issue preclusion, which has four elements: "(1) the issue is the same as that involved in a prior litigation; (2) the issue was actually litigated; (3) the issue was determined by a valid and final judgment; and (4) the determination was essential to the judgment." *Nat'l Farmers Union Standard Ins. Co. v. Morgan*, 966 F.2d 1250, 1253 (8th Cir. 1992) (citing *Lane v. Sullivan*, 900 F.2d 1247, 1250 (8th Cir. 1990) (citing *East Texas Motor Freight Lines, Inc. v. Freeman*, 713 S.W.2d 456, 459 (Ark. 1986))).

Collateral estoppel bars the claims alleged in the Complaint. First, the Complaint attempts to relitigate the meaning of "actual charges" under the same cancer insurance policies involved in the *Runyan* action, on behalf of the settlement class in *Runyan*. Second, the issues raised by Plaintiffs here were litigated in the *Runyan* action to a final judgment on the merits and a dismissal with prejudice. *See, e.g.*, *Francis*, 31 S.W.3d at 846 (settlement is "a final adjudication on the merits of 'all matters in controversy between the parties,'" and a "[d]ismissal with prejudice is as conclusive of the rights of the parties as if there were an adverse judgment as to the plaintiff after a trial"). Third, those issues were determined by a valid and final judgment, affirmed by the state's highest court. And finally, the determination of the "actual charges" issues under the policies was essential to the *Runyan* final judgment. Accordingly, Plaintiffs' claims in this action are also barred by collateral estoppel.

**Plaintiffs' Claims Have Been Released**

The *Runyan* final judgment includes a broad release that was included in the notice. Plaintiffs do not dispute that their claims in this case fall within the scope of the *Runyan* release. "[A] suit can be barred by the earlier settlement of another suit in either of two ways:

*res judicata* or release." *Reppert v. Marvin Lumber & Cedar Co.*, 359 F.3d 53, 56 (1st Cir. 2004) (citation omitted) (subsequent federal court action was barred by both *res judicata* and release); *Grant Cnty. Sav. & Loan Ass'n v. Resolution Trust Corp.*, 968 F.2d 722, 725 (8th Cir. 1992) (settlement agreement released the defendant from pending claims). The *Runyan* release is comprehensive and expressly includes, among other things, any and all claims that were asserted or could have been asserted in the *Runyan* action; any and all claims "relating to premiums or benefits under the Policies including but not limited to Claims relating to the amount of premiums paid or payable, the amount of benefits paid or payable"; any and all claims relating to "any type of Actual Charges Benefits paid or payable under a Policy, or the meaning, definition, or interpretation of 'actual charges' or 'charges' under a Policy"; and any and all claims relating to "the Company's administration of the Policies including but not limited to the forms, processes, proof of loss requirements, or procedures used in connection with or relating to the processing of claims and payment of benefits under such Policies, or any changes to such forms, processes, proof of loss requirements, or procedures." Final Judgment at 6-7 ¶ 8. The final judgment expressly states that: "Notwithstanding any other provision of the Settlement Agreement or this Final Judgment, under no circumstances shall the Release be interpreted to allow any future claims challenging the Company's interpretation of 'actual charges' or 'charges,' . . ." *Id.* at 9 ¶ 8.

This release bars all claims asserted in the Complaint, and any claims Plaintiffs might assert with the respect to the *Runyan* settlement or any claims for benefits or related to the interpretation of the terms of their insurance policy. This applies equally to the purported class claims. *Hall*, 730 F. Supp. 2d at 945-46 ("Hall's class claims are the same as those litigated and then released in *Runyan*, so those claims are barred").

**The Anti-Injunction Act**

Transamerica also moves to dismiss pursuant to the Anti-Injunction Act, 28 U.S.C. § 2283, which is "an absolute prohibition against enjoining state court proceedings." *Atl. Coast Line R.R. Co. v. Bhd. of Locomotive Eng'rs*, 398 U.S. 281, 286 (1970).   There are three exceptions to the Anti-Injunction Act, but Plaintiffs do not allege that those exceptions apply here.[35]   Instead, Plaintiffs contend that the Anti-Injunction Act does not apply here because they are not seeking an express injunction of the *Runyan* proceedings and, in any event, those proceedings have concluded.   But Plaintiffs misunderstand the scope of the Anti-Injunction Act. The Fourth Circuit has observed that it is not limited to express injunctions and also applies where the plaintiffs seek declaratory and restitutionary relief that "would have the same effect as an injunction." *Denny's, Inc. v. Cake*, 364 F.3d 521, 528 n.8 (4th Cir. 2004).

The relief sought by Plaintiffs here would interfere with the continuing jurisdiction of the Arkansas Circuit Court and would unquestionably have the same effect as an injunction. The declaratory relief Plaintiffs seek would effectively prohibit Transamerica from complying with the *Runyan* court's final judgment, and Plaintiffs' prayer for restitution would require Transamerica to violate the *Runyan* final judgment.   Transamerica correctly observes that the Anti-Injunction Act prohibits this result. *Emp'rs Res. Mgmt. Co.*, 65 F.3d at 1130 ("We take seriously the mandate in the Anti-Injunction Act and recognize that for over two hundred years, the Act has helped to define our nation's system of federalism."); *see also Denny's, Inc.*, 364 F.3d at 528, 531 (quoting *Emp'rs Res. Mgmt. Co.*, 65 F.3d at 1130; finding the Anti-Injunction

---

[35] The Anti-Injunction Act provides that "[a] court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments." 28 U.S.C. § 2283.  These three exceptions to the Act are to be "construed narrowly." *Emp'rs Res. Mgmt. Co. v. Shannon*, 65 F.3d 1126, 1129-1130 (4th Cir. 1995).

Act "rendered the district court powerless to issue" declaratory or injunctive relief related to separate state court proceedings).

Plaintiffs' contention that the *Runyan* proceedings are over and that there is nothing to enjoin is contrary to the terms of the final judgment, through which the state court expressly retained "exclusive jurisdiction" to enforce, interpret, and administer the settlement and to "resolve[] any disputes, claims or causes of action that . . . are related to or arise out of the Settlement Agreement, and/or th[e] Final Judgment." Final Judgment at 12 ¶ 16(a). The Anti-Injunction Act applies to "state court proceedings," which are defined broadly to apply "not only to an execution issued on a judgment, but to any proceeding supplemental or ancillary taken with a view to making the suit or judgment effective." *Hill v. Martin*, 296 U.S. 393, 403 (1935). The prohibition of the Anti-Injunction Act "cannot be evaded by addressing the order to the parties" rather than to the state court. *Atl. Coast Line R.R. Co.*, 398 U.S. at 287. In this case, the Plaintiffs seek to declare and enforce a different method of calculation and paying Actual Charges Benefits that would be in direct conflict with the *Runyan* final judgment; and Plaintiffs seek an award of restitution that would effectively require Transamerica to violate the final judgment for claims that have already been paid to every member of the *Runyan* class. ECF No. 1, at p. 54. This would "result in precisely the same interference with and disruption of" the *Runyan* final judgment "that the longstanding policy limiting injunctions was designed to avoid." *Samuels v. Mackell*, 401 U.S. 66, 72 (1971); *see also Everson v. Doughton*, 2009 WL 903316, at *2 (M.D.N.C. Apr. 2, 2009), aff'd, 366 F. App'x 461 (4th Cir. 2010) ("[T]he ultimate relief that Plaintiffs request, a permanent injunction against enforcement of Judge Doughton's final judgment, is squarely prohibited by the Anti–injunction Act."). For these reasons, the Anti-Injunction Act bars Plaintiffs' claims and independently requires dismissal.

-54-

### Comity and Federalism

Transamerica also moves to dismiss based on principles of comity and federalism, arguing that, even if the Anti-Injunction Act were inapplicable, the Court should dismiss this action because the state court retained exclusive jurisdiction over disputes involving the settlement or final judgment, and Plaintiffs can seek individual relief from the final judgment in the state court. Plaintiffs disagree, pointing out that the principal case upon which Transamerica relies for this proposition is an unpublished decision from another jurisdiction. *See Bar Codes Talk, Inc. v. GS1, Inc.*, 2010 WL 4510982, at *2 (M.D. Fla. Nov. 2, 2010) (dismissing federal court challenge to state class action settlement, where "state court retain[ed] exclusive jurisdiction over [the] settlement agreement"). In the *Bar Codes* case, the federal district court explained that "it would not make sense for the state court to retain jurisdiction, yet have the district court determine what the state court meant in the consent judgment." *See id.* at *1. Although the *Bar Codes* opinion is not controlling, this Court finds its reasoning persuasive and notes that the court's decision in *Bar Codes* relied on decisions from several other jurisdictions, including a decision in this district, which similarly dismissed federal litigation in deference to the state court's reservation of jurisdiction. *See id.* at *2 (citing, *inter alia*, *House v. Aiken Cnty. Nat'l Bank*, 956 F. Supp. 1284, 1292 (D.S.C. 1996); *Petoskey Inv. Grp., LLC v. Bear Creek Twp.*, 2005 WL 1796130, at *8-9 (W.D. Mich. July 27, 2005); *Johnson v. Hoffman*, 1996 WL 296527, at *6 (E.D. Pa. June 3, 1996) (in dicta)).

Questions of comity and federalism are unquestionably raised by Plaintiffs' Complaint, which seeks to unwind a national class action settlement that the state trial and appellate courts spent several years adjudicating and resolving, and to relitigate released claims related to the interpretation of thousands of insurance policies. The state court expressly retained "continuing

and exclusive jurisdiction as to all matters relating to the administration, consummation, enforcement, and interpretation of the Settlement Agreement and [the] Final Judgment," including the jurisdiction to enforce the terms of the settlement agreement, resolving any disputes that arise out of the settlement agreement or final judgment, and entering orders to protect or effectuate the final judgment and settlement agreement.  *See* Final Judgment at 12 ¶ 16.  Transamerica correctly points out that, because the *Runyan* court retained jurisdiction over the settlement, Plaintiffs can seek relief from the final judgment in the state court.  For example, to the extent Plaintiffs have colorable grounds why they should not be bound by the judgment, they can move for an order in the *Runyan* court excluding themselves from the settlement.

Plaintiffs do not dispute that the state court retained jurisdiction over the claims asserted in this litigation, but they argue that the *Runyan* court cannot determine the *res judicata* effect of its own judgment.  ECF No. 30, at pp. 27-28.  Plaintiffs' misunderstand this issue, which is not related to *res judicata*.  *See, e.g.*, *Sandler Assocs., L.P. v. BellSouth Corp.*, 818 F. Supp. 695, 705 (D. Del. 1993) (dismissing claims "based on principles of comity between state and federal courts"; explaining that failure to respect the state court's decision would "unjustifiably proliferate litigation, defeat legitimate expectations of the settling parties, engender uncertainty among class members and defendants as to their ability to retain the benefits of settlements, discourage settlements altogether and create unwarranted conflict between state and federal courts").  Plaintiffs also complain that it would be inconvenient to make them leave their home state to seek exclusion from the *Runyan* action in Arkansas.  ECF No. 30, at pp. 35-36.  This contention is unpersuasive.  Plaintiffs are represented by law firms from two different states, and all of their lawyers are already admitted to practice *pro hac vice* before the *Runyan* court.  As Transamerica points out, the relief sought in this case profoundly implicates the *Runyan* court's

exclusive jurisdiction.  For all of these reasons, the Court dismisses Plaintiffs' claims in deference to the exclusive retention of jurisdiction by the *Runyan* court.

## CONCLUSION

The Court has thoroughly reviewed the entire record, including the pleadings, motions, responses, replies, the arguments of counsel, and the applicable law.  For the reasons stated above, the Court finds that it lacks subject matter jurisdiction over the breach of contract and bad faith claims, as those claims are barred by the *Rooker-Feldman* doctrine.  Even if the *Rooker-Feldman* doctrine did not apply, the Court grants the defendants' motion to dismiss on the remaining grounds argued by the defendants.

The claim for declaratory relief is dismissed on the basis of Full Faith and Credit, res judicata, collateral estoppel, the release in the *Runyan* final judgment, and the Anti-Injunction Act.  The Court also dismisses the claim for declaratory relief based on the state court's retention of exclusive jurisdiction over the *Runyan* final judgment and principles of comity and federalism.

**IT IS THEREFORE ORDERED** that Defendant Transamerica's motion to dismiss (ECF No. 19) is **GRANTED**; **IT IS FURTHER ORDERED** that Defendant AEGON USA, LLC's motion to dismiss (ECF No. 20) is **GRANTED on the same bases as the Court has granted Transamerica's motion to dismiss**[36]; **IT IS FURTHER ORDERED** that the Complaint is dismissed with prejudice, and the Clerk is instructed to close this matter; and **IT IS FURTHER ORDERED** that Plaintiffs' Motion for Leave to Amend Complaint (ECF No. 27) is **GRANTED in part and found to be moot in part**.  Defendants' Motion for Notice of Filing and Request for Judicial Notice (ECF No. 47) is denied.

---

[36] It is not necessary to discuss the arguments by Aegon that the Court lacks personal jurisdiction over it, in light of the dismissal of the case on the other grounds argued.

**IT IS SO ORDERED**.

September 28, 2015                    <u>s/R. Bryan Harwell</u>
Florence, SC                         R. Bryan Harwell
                                     United States District Judge